Richard Joseph **WALDRON** and Sara **Waldron**, Plaintiffs,

v.

**RAYMARK INDUSTRIES, INC.**, Defendant.

**Civ. A. No. 1:88–CV–1229–RLV.**

United States District Court, N.D. Georgia, Atlanta Division.

Jan. 31, 1989.

---

**236**

Paul T. Gillenwater and H. Douglas Ni-
chol, Gillenwater, Nichol & Ames, Knox-
ville, Tenn., for plaintiffs.

Edgar A. Neely, III and Richard A.
North, Jr., Neely & Player, Atlanta, Ga.,
for defendant.

## ORDER

VINING, District Judge.

In this personal injury action, the plain-
tiffs seek recovery for damages allegedly
resulting from the manufacture and sale of
asbestos-containing products by Raymark
Industries, Inc. Raymark previously
moved this court to certify a mandatory
class action to consolidate all present and
future asbestos-related personal injury ac-
tions brought against it. The court grant-
ed that motion and certified the class.
However, in responding to petitions filed
by plaintiffs with claims pending against
Raymark in several different states, the
Eleventh Circuit issued a writ of manda-
mus and directed this court to vacate its
order certifying the class and staying all
related litigation. *In re Temple*, 851 F.2d
1269 (11th Cir.1988).

Raymark has now filed a new motion to
certify a mandatory class action and has
tried to meet the objections raised by the
Eleventh Circuit when it granted the writ
of mandamus. Also pending before the
court is the motion by certain plaintiffs in
other actions seeking to intervene in order
to have an opportunity to appear and op-
pose Raymark's motion. That motion to
intervene is GRANTED, but the interven-
tion will be for the limited purpose of par-
ticipating in any appeal of this order.

In its new motion, Raymark seeks to
avoid some of the problems that occurred
when the court granted its earlier motion
to certify this as a class action by asking
this court to appoint a guardian *ad litem*
for all future claimants, to order that all
present and future claimants who oppose
the proposed class certification be given an
opportunity to be heard prior to any such
certification, and to allow discovery with
respect to Raymark's claims that it has
only a limited fund which is insufficient to
cover its potential liability in the actions
pending against it and which may be filed
against it in the future.

Although this court is sympathetic with
Raymark's financial position and with its
apparent desire to see that as many plain-
tiffs as possible are compensated for any
injury done to them (as opposed to letting a
potentially small number of plaintiffs en-
force large judgments against it, thereby
depleting its assets), this court has conclud-
ed that it cannot certify a mandatory plain-
tiff class in this litigation. Despite Ray-
mark's commendable efforts, this court be-
lieves that such efforts would prove fruit-

less. Even if Raymark's proposals regarding notice to class members and determination of its financial position were implemented, there would still be major barriers blocking Raymark's attempts to have this case certified as a class action. Because the court has determined that these barriers are insurmountable, the court does not reach the issue of whether Raymark's assets do in fact constitute a limited fund.

The court is of the firm belief that the process of having each individual litigate his or her claim against Raymark in all the thousands of cases pending against Raymark is ineffective and inefficient and results in substantial funds being expended for attorney's fees that could more properly be used to compensate asbestos victims. Furthermore, the current method of handing asbestos litigation does nothing to insure that those persons whose injuries have not yet been manifested will be able to receive compensation for their injuries, since the funds to pay them may by that time be depleted. Despite these misgivings, however, this court must work within the bounds of the law as interpreted by it and by higher courts.

Raymark seeks to have this case certified as a class action pursuant to Rule 23(b)(1)(B), Federal Rules of Civil Procedure, which provides that an action may be maintained as a class action if, in addition to the other prerequisites for a class action, the prosecution of separate actions by individual members of the class would create a risk of "adjudications with respect to individual members of the class which would as a practical matter be dispositive of the interests of the other members not parties to the adjudications or substantially impair or impede their ability to protect their interests." A Rule 23(b)(1)(B) class action is commonly referred to as a "limited fund" since such an action is based upon the theory that there is only a limited fund to satisfy the claims of potential plaintiffs and that individuals who sue first could exhaust the fund, leaving subsequent plaintiffs with no remedy.

Despite its laudatory purposes, the practical scope of Rule 23(b)(1)(B) is extremely limited, and the restrictions placed upon its application by the federal appellate courts make it appear that availability of a Rule 23(b)(1)(B) class action to protect plaintiffs is purely illusory. Although many commentators have seen Rule 23(b)(1)(B) as a solution to the problem of determining the rights of large numbers of injured persons, *see e.g.,* Comment, *Federal Mass Tort Class Actions: A Step Toward Equity and Efficiency,* 47 Albany L.Rev. 1180 (1983); Note, *Mass Exposure Torts: An Efficient Solution to a Complex Problem,* 54 U.Cin.L.Rev. 467 (1985), attempts to utilize this form of a class action have been uniformly rejected by the appellate courts. *See In re Dennis Greenman Securities Litigation,* 829 F.2d 1539 (11th Cir.1987); *In re School Asbestosis Cases,* 789 F.2d 996 (3d Cir.1986); *In re Bendectin Products Liability Litigation,* 749 F.2d 300 (6th Cir.1984); *In re Northern District of California, Dalkon Shield IUD Products Liability Litigation,* 693 F.2d 847 (9th Cir. 1982); *In re Federal Skywalk Cases,* 680 F.2d 1175 (8th Cir.1982).

Although most Rule 23(b)(1)(B) class certifications have been set aside on the basis of an inadequate record to support the finding of a limited fund, the courts, and some commentators, have also recognized two other obstacles to such a class action—personal jurisdiction over unwilling plaintiffs and the Anti-Injunction Act.

In order to fulfill the purpose of Rule 23(b)(1)(B), a class action maintained under that subsection would have to be a mandatory plaintiff class. Otherwise, large numbers of plaintiffs could opt out and continue to exhaust the limited fund through the filing of their own lawsuits. Nevertheless, this court would have no basis by which to exercise personal jurisdiction over plaintiffs who did not have sufficient minimum contacts to allow the exercise of such jurisdiction. Since lack of personal jurisdiction can be waived, in the typical class action, which allows plaintiffs to opt out, those plaintiffs who do not opt out have, in effect, waived the court's lack of personal jurisdiction over them. However, in a mandatory class action, where

plaintiffs are not permitted to opt out, no such waiver is present. Any attempt to exercise jurisdiction over such non-consenting plaintiffs would undoubtedly violate those plaintiffs' constitutional due process rights.

Although not directly on point, the case of *Phillips Petroleum Co. v. Shutts,* 472 U.S. 797, 105 S.Ct. 2965, 86 L.Ed.2d 628 (1985), is instructive on this point. In that case the Supreme Court discussed the extent to which a state court could exercise personal jurisdiction over persons who did not possess the minimum contacts with the forum which would support personal jurisdiction. The Supreme court held that the forum state could exercise personal jurisdiction over a plaintiff who did not possess such minimum contacts with the forum, but several prerequisites had to be met before such jurisdiction could be exercised. In addition to requiring that the plaintiff be given notice and an opportunity to be heard and participate in the litigation the Supreme Court specifically held that "due process requires at a minimum that an absent plaintiff be provided with an opportunity to remove himself from the class." 472 U.S. at 812, 105 S.Ct. at 2974. That language would be equally applicable to federal courts seeking to exercise personal jurisdiction over plaintiffs with insufficient minimum contacts with the forum to support personal jurisdiction.[1]

Consequently, this court concludes that a mandatory class action would violate the constitutional rights of those persons who have insufficient contacts to allow the court to exercise personal jurisdiction over them.

■ There is yet another problem which this court must confront in determining whether class certification is permissible in the context of this asbestos litigation. Be-

cause of this court's history of dealing with asbestos cases and because of the petition for writ of mandamus that resulted in this court's being directed to vacate its earlier order certifying this as a class action, this court is aware that there are numerous, undoubtedly in the thousands, state court actions pending against Raymark. Certifying a mandatory class action would necessarily mean enjoining such state court actions.

In *In re Temple,* 851 F.2d 1269 (11th Cir.1988), the Eleventh Circuit recognized that certifying a mandatory class in a mass tort case "clearly implicates the Anti-Injunction Act." 851 F.2d at 1271. In dicta, yet strongly worded dicta, the Eleventh Circuit expressed its doubts that such a mandatory class action could be maintained in the face of the Anti-Injunction Act. The Anti-Injunction Act, 28 U.S.C. § 2283, states:

A court of the United States may not grant an injunction to stay proceedings in a state court except as expressly authorized by Act of Congress, or when necessary to aid its jurisdiction, or to protect or effectuate its judgments.

In *In re Temple,* the Eleventh Circuit cited with approval *In re Federal Skywalk Cases,* 680 F.2d 1175 (8th Cir.1982), and *In re Glenn W. Turner Enterprises Litigation,* 521 F.2d 775 (3d Cir.1975). Those cases held that the theory of a limited fund could not overcome the absolute language of the Act and that the three expressed exceptions contained in the Act were inapplicable. Although the Eleventh Circuit declined to decide whether the Anti-Injunction Act had been violated by this court's prior class certification order the Court presaged its position when it stated, "However, we note that the principles of comity are implicated by the district court's disregard for the sovereignty of the state

---

1. In a curious footnote the Eleventh Circuit has stated that there may be circumstances under which plaintiffs might "have the right to opt out of even a mandatory class action." *In re Temple,* 851 F.2d 1269, 1272 fn. 5 (11th Cir.1988). The idea of a mandatory class with opt out rights, besides being oxymoronic, is contrary to the very purpose for which a Rule 23(b)(1)(B) class action is meant to serve. A Rule 23(b)(1)(B) class action is designed to preserve the limited fund for the entire class against the individual claims of class members prosecuted through separate suits. Allowing plaintiffs to opt out of a Rule 23(b)(1)(B) class action would defeat this purpose. This court's research has revealed no case wherein parties were allowed to opt out of a mandatory class.

court systems enjoined." 851 F.2d at 1272. This court holds that a mandatory class action which would, of necessity, require the enjoining of numerous state court actions, would be violative of the Anti–Injunction Act.

Although this court would like to see a mechanism by which asbestos victims would be fairly and promptly compensated, this court, regretfully, concludes that the law does not allow a class action pursuant to Rule 23(b)(1)(B) to be that mechanism. For the reasons stated above, Raymark's motion to certify this action as a class action is DENIED.

Pursuant to 28 U.S.C. § 1292(b), this court is of the opinion that this order involves a controlling question of law as to which there is substantial ground for difference of opinion and that an immediate appeal from this order may materially advance the ultimate termination of this litigation.

SO ORDERED.