In re JOINT EASTERN AND SOUTH-
ERN DISTRICT ASBESTOS
LITIGATION.

In re EAGLE–PICHER
INDUSTRIES, INC.

Sarah Jane WHITE, Administratrix of
the Estate of Gerald White and Donald
Dellenbaugh and Linda Dellenbaugh,
on Behalf of Themselves and All Others
Similarly Situated, Plaintiffs,

v.

EAGLE–PICHER INDUSTRIES,
INC., Defendants.

NYAL Index No. 4000.
Class Civ. A. No. 90–4253.

United States District Court,
E. & S.D. New York.

Dec. 12, 1990.

Law Offices of Peter G. Angelos, Baltimore, Md. by Peter G. Angelos, Waite, Schneider, Bayless & Chesley, Cincinnati, Ohio by Stanley Chesley, Janey Abaray, and Fay Stilz, Dickstein, Shapiro & Morin, Washington, D.C. by David I. Shapiro, Walter J. Walvick and Angelo V. Arcadipane, Clark, Gagliardi & Miller, White Plains, N.Y. by Henry Miller, Morton B. Silberman and Lawrence T. D'Aloise, Jr., for plaintiffs.

Weil, Gotshal, & Manges, New York City by Arvin Maskin, Stephen Karotkin, Barbara E. Taylor, and Jacqueline Prescott, Eagle–Picher Industries, Cincinatti, Ohio by Marc. L. Greenberg, for defendants.

Greitzer & Locks, New York City by Gene Locks and Jonathan Miller, Cupit, Jones & Fairbank, Jackson, Miss. by Daniel E. Cupit, Greenfield Eisenberg Stein & Senior, New York City by Norman A. Senior, Robles & Gonzalez, Miami, Fla. by Louis S. Robles, Julien & Schlesinger, New York City by Michael Taub, Phillips, Lytle, Hitchcock, Blaine & Huber, Buffalo, N.Y. by James W. Whitcomb and Mary M. Carroll, Ness, Motley, Loadholt, Richardson, Poole, Charleston, S.C. by Ronald Motley, Baron & Budd, Dallas, Tex. by Frederick Baron and Brent Rosenthal, Henderson & Goldberg, Pittsburgh, Pa. by Tom Henderson, Debevoise & Plimpton by Roger E. Podesta and Anne E. Cohen, Parker Chapin Flattu & Kimpl, New York City by Stephen G. Rinehart and Stephen F. Harmon, Sharlock, Repcheck & Mahler, Pittsburgh, Pa., by John J. Repcheck, Gollatz, Griffin, Ewing & McCarthy, Philadelphia, Pa. by Frank H. Griffen, Shea & Gardner, Washington, D.C. by William R. Hanlon, Rowland & Rowland, Knoxville, Tenn. by Michael Y. Rowland, Thornton & Early, Boston, Mass. by Michael P. Thornton, Cadwalader, Wickersham & Taft, New York City by Rober Knuts and Grant B. Hering, Kazan, McClain, Edises & Simon, Oakland, Cal. by Steven Kazan, for other parties.

### MEMORANDUM ON STAYS

WEINSTEIN, District Judge:

This Memorandum describes the authority of a federal court to stay proceedings in all other courts to prevent the inequitable distribution of a limited pool of assets after a "limited fund" class action has been conditionally certified in accordance with a proposed settlement agreement. Part One briefly describes the current status of asbestos litigation in the courts. Part Two outlines the procedural background of the current proceedings. Part Three provides the legal basis for enjoining all proceedings against Eagle–Picher Industries, Inc. ("Eagle–Picher").

### I. ASBESTOS LITIGATION

Asbestos litigation in the federal and state courts has reached crisis proportions. Over 100,000 pending asbestos personal injury and wrongful death cases have backlogged the courts—preventing many injured persons from obtaining much needed compensation in a timely and efficient manner. Even more troubling is the current realization that each day, as more judgments are paid, the possibility that similarly situated claimants will not receive the full value of their claims becomes increasingly likely. A fundamental tenet of our legal system—equal treatment—no longer exists for asbestos victims.

The national war over asbestos has produced unnecessary casualties. Many of the persons harmed by asbestos-containing products have been injured once again by our legal system's method of litigating tort

cases. Case-by-case adjudications for each injured person has both delayed payment and consumed the bulk of the monies available for those injured. Less than 40% of every asbestos-litigation dollar goes to pay asbestos victims—the persons who actually suffered the injury. *See, e.g.,* Institute of Civil Justice, *Annual Report,* April 1, 1990 —March 31, 1991 (Rand). Much of the billions of dollars in transaction costs going to attorneys could be used to compensate the suffering and injured. Judicial resources now unnecessarily tied up in these cases could be used for other pressing needs.

Amatex Corporation, Brunswick Fabricators, Celotex Corporation, 48 Insulations, Inc., Johns–Manville Corporation, National Gypsum Company, Nicolet Inc., Pacor, Inc., Raytech Corporation, Standard Insulations, Inc. and Unarco Industries have all filed for bankruptcy protection in the face of a deluge of asbestos-related damage claims and mounting asbestos litigation expenses. The transaction costs and attorneys fees associated with these bankruptcy proceedings have further reduced the total funds available to compensate those injured by asbestos. The bankruptcies have also generally delayed payments for many years.

It has become impossible to ignore this challenge to our justice system. A compensation scheme geared towards victims' needs that is fair and equitable and maximizes their recovery is desirable. The circumstances of this case provide an appropriate method of accomplishing this result through a class action pursuant to Rule 23(b)(1)(B) of the Federal Rules of Civil Procedure.

## II. PROCEDURAL BACKGROUND

Eagle–Picher, a manufacturer of asbestos-containing insulation products, typifies the experiences of other asbestos manufacturers.

Some 130,000 asbestos-related personal injury and wrongful death cases have been filed against it; approximately half of these are currently pending in state and federal courts nationwide. For the fiscal year ending November 30, 1990, 21,523 claims were filed. No downturn in asbestos-related claims against Eagle–Picher can be expected.

Eagle–Picher's financial condition has steadily deteriorated. Operating income— while substantial—is insufficient to pay asbestos-related claims. The company has been forced to sell a large part of its assets to raise cash for payment of these claims. Insurance coverage has been all but exhausted.

Seeking an alternative to bankruptcy, Eagle–Picher moved for certification of a class pursuant to Rule 23(b)(1)(B) of the Federal Rules of Civil Procedure. The class would consist of all persons who currently, or may at any time in the future, assert or claim to have asbestos-related personal injury or wrongful death claims against Eagle–Picher based upon exposure to its asbestos-containing products.

On August 13, 1990, at the initial hearing on Eagle–Picher's motion, the court appointed the Honorable Marvin E. Frankel as Special Master to determine whether the financial assets of Eagle–Picher are so limited that payment of asbestos-related personal injury and wrongful death claims, cross-claims and third-party claims are in jeopardy and whether there is a substantial probability that the claims of earlier litigants would exhaust Eagle–Picher's assets—preventing payment to later litigants. The Honorable Bertram Harnett was appointed Special Master to review the availability of insurance coverage and related matters on August 16, 1990.

The court directed Eagle–Picher to give "immediate notice" of an initial hearing to be held by Special Master Frankel on August 15, 1990. Notice was given by telephone and telecopy to over 1000 attorneys with asbestos-related personal injury and wrongful death claims. The initial meeting produced schedules both for discovery and the hearings. This timetable was mailed to approximately 2000 attorneys for persons with asbestos-related claims and over 40 attorneys for other defendants.

Special Master Frankel held four days of hearings and reviewed in excess of 5,000

pages of documents. Oral argument was held by him on September 6, 1990. On September 7, 1990, Special Master Frankel submitted his report, which concluded:

> [Eagle–Picher's] assets ... are and will be so limited as to create a substantial risk that payments for present and prospective asbestos-related claims will be so limited as to create a substantial risk that payments for personal injury and wrongful death will be in jeopardy.... There is a substantial probability that the award of damages to earlier litigants will exhaust defendant's available and projected assets.... Although the defendant is not now insolvent, there is a likelihood that it will become insolvent within the next two or three years....

*In re Joint Eastern and Southern Districts Asbestos Litigation (Eagle–Picher)*, 132 F.R.D. 332, 342 (E. & S.D.N.Y.1990). Special Master Harnett's conclusion that "insurance proceeds for bodily injury remaining ... will not exceed $10,000,000" was incorporated into Special Master Frankel's report. Special Master Harnett's Report, *In re Joint Eastern and Southern District Asbestos Litigation; Loper v. Eagle–Picher Industries*, Nos. 4000, 87–1383, at 23–24 (E. & S.D.N.Y. Sept. 7, 1990).

A hearing to show cause why Special Master Frankel's report should not be accepted was held on September 24, 1990. The hearing was attended by numerous plaintiffs' and defendants' attorneys. No substantial objection to the accuracy of these reports has been made. They are confirmed.

On October 1, 1990, in view of Special Master Frankel's findings and the entire record to date, the court determined that it was "necessary and in the best interests of the proposed class to expedite resolution of this matter to prevent further financial deterioration of Eagle–Picher and thus secure prompt and equitable payments to eligible present and future claimants." *In re Joint Eastern and Southern Districts Asbestos Litigation (Eagle–Picher)*, 132 F.R.D. 332, 333 (E. & S.D.N.Y.1990). In view of the need for continuing settlement discussions,

additional counsel on behalf of class members were appointed on November 19, 1990.

Appointed counsel and Eagle–Picher conducted intensive settlement negotiations during October and November of 1990. These negotiations have produced the Memorandum of Understanding of Proposed Settlement ("settlement agreement") executed by counsel for Eagle–Picher, representative counsel for future claimants and one of the representative counsel for present claimants.

On November 26, 1990, the court directed that all interested parties appear on December 7, 1990 and show cause why the proposed class should not be certified and asbestos-related proceedings in other forums stayed. The court conducted extensive hearings on the status and substance of the settlement negotiations and the principles of the settlement agreement on December 7 and 10, 1990.

A class action complaint on behalf of putative class representatives was filed on December 10, 1990 and subsequently amended.

During the hearings the court was informed that an involuntary petition for bankruptcy was filed by three asbestos plaintiffs of Eagle–Picher on December 10, 1990. The court held a hearing on the applicability of the automatic stay, 11 U.S.C. § 362(a)(1), and concluded that it was inapplicable for reasons stated on the record. At the request of the bankruptcy petitioners, the next morning the bankruptcy case was dismissed with prejudice by the bankruptcy court as of the time of filing.

Upon conclusion of the hearings on the status of the settlement negotiations, the court conditionally certified a class action and stayed any pending asbestos-related proceedings brought on behalf of class members.

## III. LEGAL ANALYSIS

Asbestos litigation has generated unprecedented challenges to both state and federal court systems. A limited fund class action—seeking to end the repetitious, wasteful and burdensome litigation that

has become a hallmark of asbestos proceedings—may provide one tool to assist in resolving all present and future asbestos claims expeditiously and equitably. *See In re Joint Eastern and Southern Districts Asbestos Litigation (Johns–Manville)*, 120 B.R. 648 (E. & S.D.N.Y.1990) (parallel litigation involving Manville Personal Injury Settlement Trust).

## A. *Effect of Class Certification*

■ Conditional certification of a national mandatory class action pursuant to Rule 23(b)(1)(B) of the Federal Rules of Civil Procedure will supercede all litigation against Eagle–Picher pending in federal and state forums. *See In re Federal Skywalk Cases*, 680 F.2d 1175, 1180–82 (8th Cir.), *cert. denied*, 459 U.S. 988, 103 S.Ct. 342, 74 L.Ed.2d 383 (1982) (certification order will enjoin prosecution of pending state court actions); *In re Joint Eastern and Southern Districts Asbestos Litigation (Johns–Manville)*, 120 B.R. 648 (E. & S.D. N.Y.1990) (same). The effect of conditional class certification will be for all pending state and federal cases to become part of the mandatory class and cease to exist as independent cases. If the settlement agreement is approved by the court, all pending actions will be adjudicated according to the settlement's terms—saving scarce funds for distribution among all class members.

To permit pending actions against Eagle–Picher to proceed in their present form would substantially impair or impede the interests of other asbestos claimants and would significantly deplete the assets available to resolve all pending and future cases. These pending cases, if allowed to continue independently, will seriously hinder the ability of the court to evaluate the adequacy and fairness of the proposed settlement of the class action by constantly depleting Eagle–Picher's assets. The need to end this drain of Eagle–Picher's assets is especially acute in view of Special Master Frankel's limited fund findings and the rate at which new claims are being filed.

The court was informed that no cases are actually on trial. Halting present litigation will save a great deal of legal expenses. It is also efficient and reflects the growing cooperation among federal and state courts in adjudicating asbestos cases. *See In re Joint Eastern and Southern Districts Asbestos Litigation (Johns–Manville)*, 120 B.R. 648 (E. & S.D.N.Y.1990). Should any court, for special circumstances, desire to continue with scheduled trials or hearings, an application for an exception may be made.

## B. *Operation of Anti–Injunction Act*

Since the certification of a mandatory national class action will enjoin all pending cases including those filed in state courts, the court considers the implications of the Anti–Injunction Act. 28 U.S.C. § 2283 (1988); *see In re Dennis Greenman Sec. Litig.*, 829 F.2d 1539, 1544 (11th Cir.1987). The Anti–Injunction Act precludes a federal court from staying existing proceedings in state court "except as expressly authorized by Act of Congress, or when necessary in aid of its jurisdiction, or to protect or effectuate its judgments." 28 U.S.C. § 2283 (1988); *see Standard Microsystems Corp. v. Texas Instruments Inc.*, 916 F.2d 58, 60 (2d Cir.1990).

■ The Anti–Injunction Act only prohibits a federal court from staying pending state court proceedings and does not affect a federal court's power to enjoin future state actions or any actions in other federal courts. *See Dombrowski v. Pfister*, 380 U.S. 479, 484 n. 2, 85 S.Ct. 1116, 1119 n. 2, 14 L.Ed.2d 22 (1965) (Anti–Injunction Act does "not preclude injunctions against the institution of state court proceedings, but only bar[s] stays of suits already instituted"); *accord B & A Pipeline Co. v. Dorney*, 904 F.2d 996, 1001 n. 15 (5th Cir.1990) (same). While the policy underlying the Anti–Injunction Act is avoidance of "disharmony between federal and state systems, the exception in Section 2283 reflects congressional recognition that injunctions may sometimes be necessary in order to avoid that disharmony." *Amalgamated Sugar Co. v. NL Industries*, 825 F.2d 634, 639 (2d Cir.), *cert. denied*, 484 U.S. 992, 108 S.Ct. 511, 98 L.Ed.2d 511 (1987). Under

the present circumstances, the power to enjoin the pending state cases falls within the "necessary in aid of jurisdiction" exception to the Anti–Injunction Act.

Courts have interpreted the "necessary in aid of jurisdiction" exception liberally "to prevent a state court from ... interfering with a federal court's flexibility and authority" to decide the case before it. *Atlantic Coast Line R.R. v. Brotherhood of Locomotive Eng'rs,* 398 U.S. 281, 295, 90 S.Ct. 1739, 1747, 26 L.Ed.2d 234 (1970); *see In re Baldwin–United Corp.,* 770 F.2d 328, 337 (2d Cir.1985) (same); *In re Corrugated Container Antitrust Litig.,* 659 F.2d 1332, 1334 (5th Cir.1981), *cert. denied,* 456 U.S. 936, 102 S.Ct. 1993, 72 L.Ed.2d 456 (1982) (same); *see also* Redish, *The Anti–Injunction Statute Reconsidered,* 44 U.Chi.L. Rev. 717, 754 (1977) ("necessary in aid of jurisdiction" exception should be construed "to empower the federal court to enjoin a concurrent state proceeding that might render the exercise of the federal court's jurisdiction nugatory.").

The Second Circuit has recognized that a stay of proceedings in state court is appropriate under the "necessary in aid of jurisdiction" exception "where a federal court is on the verge of settling a complex matter, and state court proceedings undermine its ability to achieve that objective." *Standard Microsystems Corp. v. Texas Instruments Inc.,* 916 F.2d 58, 60 (2d Cir.1990); *see United States v. International Brotherhood of Teamsters,* 907 F.2d 277, 281 (2d Cir.1990) (stay is appropriate to allow district judge to "legitimately assert comprehensive control over complex litigation"); *In re Baldwin–United Corp.,* 770 F.2d 328, 337 (2d Cir.1985) (court can issue injunction against actions in state court that would "frustrate the district court's efforts to craft a settlement"); *see also James v. Bellotti,* 733 F.2d 989, 994 (1st Cir.1984) (provisionally approved settlement may justify injunction against state court actions).

A mandatory national class action certified pursuant to Rule 23(b)(1)(B) falls squarely within the rationale of these controlling Second Circuit precedents. The court is in the process of reviewing the settlement agreement of the proposed class action encompassing all asbestos-related claims against Eagle–Picher. At this critical juncture, the court can only continue its evaluation if the assets available to settle the case remain intact. An injunction of all proceedings is necessary to implement the terms of the settlement and to protect the court's jurisdiction over the class action.

■ The All–Writs Act furnishes additional authority to certify the class action and to stay all pending proceedings. It empowers a federal court to issue "all writs necessary or appropriate in aid of their respective jurisdictions...." 28 U.S.C. § 1651 (1988). The Second Circuit has held that cases interpreting the "necessary in aid of jurisdiction" exception in the Anti–Injunction Act are "helpful in understanding the meaning of the All–Writs Act." *See In re Baldwin–United Corp.,* 770 F.2d 328, 335 (2d Cir.1985); *see also United States v. District of Columbia,* 654 F.2d 802, 809 n. 16 (D.C.Cir.), *cert. denied,* 454 U.S. 1082, 102 S.Ct. 637, 70 L.Ed.2d 616 (1981) (same); *Bruce v. Martin,* 680 F.Supp. 616, 621 (S.D.N.Y.1988) (same). Whether viewed as an affirmative grant of power to the courts or an exception to the Anti–Injunction Act, the All–Writs Act permits courts to certify a national class action and to stay pending federal and state cases brought on behalf of class members.

■ The All–Writs Act empowers a federal court to issue an injunction against actions in state court "even before a federal judgment is reached...." *In re Baldwin–United Corp.,* 770 F.2d 328, 335 (2d Cir.1985). Such an injunction allows the court to protect its settlement efforts. *Id.* at 337.

The court has before it a settlement agreement purporting to resolve all present and future asbestos-related claims asserted against Eagle–Picher. Conditional certification of the class is a necessary first step on the road to its possible approval and implementation. Rule 23 of the Federal Rules of Civil Procedure mandates exercise of power to maintain the status quo during the trial and appellate process. Fairness

hearings, for example, must now be conducted. A stay of all proceedings must be entered now to protect Eagle–Picher's assets during these hearings—assets the settlement assumes will be available—and to ensure an equitable result for all present and future persons injured by asbestos-containing products. Thus, the rationale of *Baldwin–United* requires interpretation of the Anti–Injunction Act to permit operation of Rule 23. *See Standard Microsystems Corp. v. Texas Instruments Inc.*, 916 F.2d 58, 60–61 (2d Cir.1990).

The "in aid of jurisdiction" exception would also authorize a stay of state court proceedings when the "federal court's jurisdiction is *in rem* and the state court action may effectively deprive the federal court of the opportunity to adjudicate as to the *res....*" *Standard Microsystems Corp. v. Texas Instruments Inc.*, 916 F.2d 58, 60 (2d Cir.1990); *Mitchum v. Foster*, 407 U.S. 225, 235–37, 92 S.Ct. 2151, 2158–59, 32 L.Ed.2d 705 (1972) (same).

Several courts have considered class action litigation analogous to *in rem* actions given their magnitude and complexity. In *Baldwin–United* the class action proceeding was "so far advanced that it was the virtual equivalent of a res over which the district judge required full control." *In re Baldwin–United Corp.*, 770 F.2d 328, 337 (2d Cir.1985); *see Battle v. Liberty National Life Ins. Co.*, 877 F.2d 877, 882 (11th Cir.1989) ("makes sense to consider this case, involving years of litigation and mountains of paperwork, as similar to a *res* to be administered").

It is readily apparent, in view of Special Master Frankel's report, that parallel court proceedings may produce inconsistent and inequitable results. Some judgments may be paid in full while others will receive nothing or less than full value. Under these circumstances, the *in rem* nature of the court's jurisdiction over the class action and the limited fund provides an additional ground for concluding that a stay of all existing proceedings is consistent with the Anti–Injunction Act.

Federal courts have also relied upon the "in aid of jurisdiction" exception to the Anti–Injunction Act to justify a stay of existing state proceedings in interpleader actions pursuant to Rule 22 of the Federal Rules of Civil Procedure. *See, e.g., United States v. Major Oil Corp.*, 583 F.2d 1152, 1158 (10th Cir.1978) (stay of state proceedings in Rule 22 interpleader is in aid of the court's jurisdiction); *Emmco Ins. Co. v. Frankford Trust Co.*, 352 F.Supp. 130, 132–33 (E.D.Pa.1972) (same); *Pan American Fire & Casualty Co. v. Revere*, 188 F.Supp. 474, 484–85 (E.D.La.1960) (same). Interpleader is traditionally employed when two or more persons claim an interest in a fund, and the claims to the fund may exceed the total value of that fund. *See State Farm Fire & Casualty Co. v. Tashire*, 386 U.S. 523, 533 n. 15, 87 S.Ct. 1199, 1205 n. 15, 18 L.Ed.2d 270 (1967).

Limited fund class actions closely resemble an interpleader action. *Cf. In re Federal Skywalk Cases*, 680 F.2d 1175, 1182–83 (8th Cir.), *cert. denied*, 459 U.S. 988, 103 S.Ct. 342, 74 L.Ed.2d 383 (1982) (implying that a limited fund is analogous to interpleader). In light of the severely limited assets of Eagle–Picher, the class members here are virtually identical to interpleader claimants. The class members, like interpleader claimants, must recover from Eagle–Picher's limited assets or not recover at all.

Given the similarity of the present class action to an interpleader action, a stay of state proceedings would be warranted under the "necessary in aid of jurisdiction" exception. Only by staying all other proceedings can the class action achieve the goal of adjudicating all asbestos claims against Eagle–Picher in one action and preventing recovery from its assets in an inequitable or inconsistent manner.

Under the circumstances of this case, it seems apparent that the Anti–Injunction Act would permit certification of a mandatory class action. Nevertheless, two courts, *In re Temple (Raymark Industries)*, 851 F.2d 1269, 1272 (11th Cir.1988) and *Waldron v. Raymark Indus., Inc.*, 124 F.R.D. 235 (N.D.Ga.1989), have denied certification of mandatory class actions relying in part on dicta in *In re Federal Sky-*

*walk Cases,* 680 F.2d 1175, 1182–83 (8th Cir.), *cert. denied,* 459 U.S. 988, 103 S.Ct. 342, 74 L.Ed.2d 383 (1982). While these cases are contrary to controlling Second Circuit precedent, they have sparked significant commentary and merit discussion.

In *Skywalk,* the Eighth Circuit vacated certification of a limited fund class action primarily on the ground that the finding of a limited fund was inadequate and unsupported as a matter of law. *Id.* at 1182–83. The Eleventh Circuit, in dicta, has construed the *Skywalk* decision as holding that the Anti–Injunction Act bars certification of a mandatory class action if state cases have been started. *See In re Temple (Raymark Industries),* 851 F.2d 1269, 1272 (11th Cir.1988), *on remand, Waldron v. Raymark Indus., Inc.,* 124 F.R.D. 235 (N.D.Ga.1989). The district court, on remand, never reached the "in aid of jurisdiction" exception to the Anti–Injunction Act because it summarily concluded that the *Temple* dicta precluded certification of a non-opt-out class action when state cases are pending. 124 F.R.D. at 237–38.

The *Temple* court's interpretation of *Skywalk* and its subsequent application in *Waldron,* however, ignore the fact that the basis for vacating certification in *Skywalk* was the absence of a limited fund. Without the limited fund—such as exists in the present case—as a jurisdictional predicate, a court cannot proceed with a limited fund class action as a basis for enjoining existing state actions. The "necessary in aid of jurisdiction" exception to the Anti–Injunction Act would not apply because the court is without jurisdiction to aid. Properly construed, *Skywalk* stands only for the proposition that where class certification is improper because no limited fund exists, a court cannot rely upon the "necessary in aid of jurisdiction" exception to the Anti–Injunction Act to justify a stay of existing state proceedings.

The dicta contained in the *Skywalk* decision and its subsequent interpretation by other courts have generated considerable criticism. *See, e.g., In re Dennis Greenman Sec. Litig.,* 829 F.2d 1539, 1544 (11th Cir.1987) ("inclined to hold the [Anti–In-junction] Act not a bar to class certification"); *In re Federal Skywalk Cases,* 680 F.2d 1175, 1192 (8th Cir.), *cert. denied,* 459 U.S. 988, 103 S.Ct. 342, 74 L.Ed.2d 383 (1982) (Heaney, J., dissenting) ("It seems self-evident that an injunction to protect the ordinary scope of a mandatory class action is 'necessary in aid of' the federal jurisdiction over such a class."); *In re Asbestos School Litigation,* 104 F.R.D. 422, 436 (E.D.Pa.1984), *modified on other grounds,* 789 F.2d 996 (3d Cir.1986) (same); *In re Dennis Greenman Sec. Litig.,* 622 F.Supp. 1430, 1449–50 & n. 15 (S.D.Fla. 1985), *rev'd on other grounds,* 829 F.2d 1539 (11th Cir.1987) (disagreeing with reasoning of *Skywalk* majority and certifying class for settlement); Gordon, *The Optimum Management of the Skywalks Mass Disaster Litigation by Use of the Federal Mandatory Class Action Device,* 52 UMKC L.Rev. 215, 231–32 (1984) (noting that several articles have described the Eighth Circuit's decision as "unreasonable," "untenable," "arcane," "obscure," "unnecessarily narrow" and "inequitable"); Note, *Class Certification in Mass Accident Cases Under Rule 23(b)(1),* 96 Harv. L.Rev. 1143, 1159–61 (1983) (certification of mandatory class comes within "necessary in aid" of jurisdiction exception to Anti–Injunction Act); Note, *Mechanical and Constitutional Problems in the Certification of Mandatory Multistate Mass Tort Class Actions Under Rule 23,* 49 Brooklyn L.Rev. 517 (1983) (compelling reasons support finding that "necessary in aid of jurisdiction" exception allows mandatory class certification).

The *Skywalk* dicta is also contrary to the presumption of validity enjoyed by the Federal Rules of Civil Procedure, which requires effective means for the enforcement of Rule 23. *See Hanna v. Plumer,* 380 U.S. 460, 471, 85 S.Ct. 1136, 1143, 14 L.Ed.2d 8 (1965).

## IV. CONCLUSION

The United States District Court for the Southern and Eastern Districts of New York has by its orders dated December 11, 1990 properly enjoined all asbestos litigation pending against Eagle–Picher, with ex-

ceptions, and restrained any new proceedings from being instituted against the company.

So ordered.