Mitchell and Tammy Holland petition for a writ of mandamus directing Mobile Circuit Judges Braxton L. Kittrell, Jr., and Robert L. Byrd, Jr., to vacate their orders of June 12, 1996, and June 14, 1996, respectively. Those orders, together, had the effect of *Page 813 
precluding the Hollands from opting out of a class action filed in the Mobile County Circuit Court by Jacqueline Anderson against Fidelity Financial Services, Inc. ("Fidelity"), and Auto Mart of the Southeast, Inc. ("Auto Mart"), and, thereby, preventing the Hollands from individually pursuing their claims for punitive damages against those entities. We grant the writ.
This dispute arose out of the Hollands' purchase of a Mazda automobile from Auto Mart. The Hollands financed the purchase through Fidelity. After repossessing the Hollands' automobile and selling it, Fidelity initiated this litigation by filing an action to recover the balance it alleged was owed by the Hollands on the debt. The Hollands counterclaimed, alleging, among other things, fraud and conspiracy to defraud in connection with the sale and financing of the automobile. The Hollands also sued Auto Mart in a separate action, alleging fraud and conspiracy to defraud. The actions against Auto Mart and Fidelity were consolidated for trial, and both actions were assigned to Judge Byrd.
The Hollands' claims were eventually set for trial on April 29, 1996. Relying on Ex parte First National Bank of Jasper,675 So.2d 348 (Ala. 1995), Fidelity moved to stay the Hollands' counterclaim against it pending the resolution of two class actions, each alleging misconduct on the part of Fidelity and Auto Mart, that had been conditionally certified in the Circuit Courts of Mobile and Washington Counties. The Mobile County class action (Glenn v. Fidelity Financial Services of Alabama,Inc., CV-94-003373) was pending before Judge Robert G. Kendall, and the Washington County class action (Coates v. Auto Mart ofthe Southeast, Inc., CV-94-4814) was pending before Judge J. Lee McPhearson. Judge Byrd granted Fidelity's motion to stay. Thereafter, Judge Kendall allowed the Hollands to opt out of the Glenn class action and Judge McPhearson ruled that the Hollands were not part of the class in the Coates class action. On motion of the Hollands, Judge Byrd rescheduled the Hollands' claims for trial on June 17, 1996.
On May 10, 1996, Judge Kittrell conditionally certified theAnderson action as a class action, without specifying which part of Rule 23(b) formed the basis for the certification. That class action, which was filed more than a year after the Hollands' counterclaim against Fidelity and their action against Auto Mart, was based on allegations of wrongful conduct on the part of Auto Mart and Fidelity similar to that alleged by the Hollands in their individual actions. Judge Kittrell's order certifying the Anderson action as a class action provided in part as follows:
 "Pursuant to the parties' motion, this action is conditionally certified as a class action, said class consisting of all individuals who have purchased from the defendants, Auto Mart of the Southeast, Inc., Melvin LaDon Summerlin, Stacey Summerlin and/or Grady Walker, 'altered' vehicles and/or vehicles whose condition, equipment or options had been misrepresented, including, but not limited to, those vehicles which have been 'altered' (i.e., striping, decals, emblems, stickers and/or medallions have been added to either or both the vehicle's exterior or interior) by the defendant, James Hughes d/b/a Preferred Stripes Custom Graphics and Accessories, and which were financed through the defendants, Fidelity Financial Services, Inc., a Mississippi corporation, and/or Fidelity Financial Services, Inc., an Alabama corporation."
Following the entry of this order, Fidelity, again relying onEx parte First National Bank of Jasper, supra, moved to stay the Hollands' claim against it, pending resolution of theAnderson class action. The Hollands responded to this motion by moving to opt out of the class. Fidelity then moved to declare the Anderson class action a mandatory action (no right to opt out) with respect to the issue of punitive damages, arguing that there was a "limited fund" from which the class members could recover and that it was preferable to have everyone with a claim against it before the trial court. The attorney for the class stated at the hearing on Fidelity's motion: "I don't want to interfere with [the Hollands'] lawsuit, as long as I can be convinced the class is protected or the funds are protected, that's all I care about." *Page 814 
Judge Kittrell granted Fidelity's motion in an order dated June 12, 1996, stating:
 "The motion to opt out of this class action proceeding has been considered by the Court and it is
 "ORDERED that the plaintiffs in the case of Holland v. Fidelity set for trial in this circuit on June 17, 1996, before the Honorable Robert L. Byrd, shall be allowed to proceed insofar but only insofar as their claims relate to compensatory damages, and any claim for punitive damages shall be considered in the instant class action."
Judge Kittrell made no factual findings as to the financial condition of Fidelity (or Auto Mart) or as to the extent of Fidelity's ability to pay damages for the alleged wrongful conduct. Two days later, on June 14, 1996, Judge Byrd entered an order again abating the Hollands' actions, pending resolution of the Anderson class action.
Two well-settled standards of review govern our decision in this case. First, a writ of mandamus, which is a drastic and extraordinary remedy, is appropriate only when the one seeking it has shown a clear legal right to the order sought; an imperative duty on the respondent to perform, accompanied by a refusal to do so; the lack of another adequate remedy; and properly invoked jurisdiction of the court. Ex parte Johnson,638 So.2d 772 (Ala. 1994). Second, an order certifying an action as a class action is generally not disturbed by this Court in the absence of an abuse of discretion on the part of the trial judge. Ex parte Gold Kist, Inc., 646 So.2d 1339 (Ala. 1994). Thus, the issue presented is whether Judge Kittrell abused his discretion in certifying the Anderson action as a mandatory class action under Rule 23, Ala.R.Civ.P. If he did, then a writ of mandamus would be appropriate to require him to set aside that order.
In Adams v. Robertson, 676 So.2d 1265, 1268-70 (Ala. 1995), cert. granted, ___ U.S. ___, 117 S.Ct. 37, 135 L.Ed.2d 1128
(1996), this Court discussed at length the nature of the various kinds of class actions available under Rule 23:
 "At the outset, we note that Rule 23 of the Alabama Rules of Civil Procedure reads the same as Rule 23 of the Federal Rules, and we consider federal case law on class actions to be persuasive authority for the interpretation of our own Rule 23. See, First Alabama Bank of Montgomery, N.A. v. Martin, 381 So.2d 32 (Ala. 1980).
 "A class action is a procedural device created solely for the purposes of litigation. The goal of a class action is to provide a simple and efficient way for processing numerous interrelated claims. A class action allows one or more persons, known as class representatives, to sue on behalf of the many persons who have the same, or similar, questions of law or fact as the representatives.
 "Under Rule 23(a), A.R.Civ.P., certain prerequisites must be met in order for one to proceed with a class action: (1) the class must be so numerous that joinder is impracticable; (2) there must be questions of law or fact common to the class; (3) the claims or defenses of the class representatives must be typical of the claims or defenses of the class; and (4) the class representatives must be able to fairly and adequately protect the interests of the class. . ..
 "Once the prerequisites are met, the class action must fit within one of the types of classes described in Rule 23(b).
 "Rule 23(b)(1) provides that a class action may be maintained if
 " 'the prosecution of separate actions by or against individual members of the class would create a risk of
 " '(A) inconsistent or varying adjudications with respect to individual members of the class which would establish incompatible standards of conduct for the party opposing the class, or
 " '(B) adjudications with respect to individual members of the class which would as a practical matter be dispositive of the interests of the other members not parties to the adjudications or substantially impair or impede their ability to protect their interests. . . .'
 "A class action may be maintained under Rule 23(b)(2) if 'the party opposing the class has acted or refused to act on *Page 815 
grounds generally applicable to the class, thereby making appropriate final injunctive relief or corresponding declaratory relief with respect to the class as a whole.'
 "A class action under Rule 23(b)(3) is appropriate when
 " 'the court finds that the questions of law or fact common to the members of the class predominate over any questions affecting only individual members, and that a class action is superior to other available methods for the fair and efficient adjudication of the controversy. The matters pertinent to the findings include: (A) the interest of members of the class in individually controlling the prosecution or defense of separate actions; (B) the extent and nature of any litigation concerning the controversy already commenced by or against members of the class; (C) the desirability or undesirability of concentrating the litigation of the claims in the particular forum; (D) the difficulties likely to be encountered in the management of a class action.'
 "Rule 23(b)(1)(A) class actions involve those classes formed if the prosecution of separate lawsuits would create the risk of inconsistent adjudications. A classic example would be separate lawsuits by individuals against a municipality concerning a bond issue, some individuals wishing to invalidate the issue, others to limit it, and still others to enforce interest payments under the bonds. Larry L. Teply Ralph U. Whitten, Civil Procedure 689 (1994). If one group succeeded in invalidating the bond issue and another succeeded in getting judgments ordering payment of the interest, the municipality would have incompatible standards with regard to the bond issue. Another example of a situation suggesting a Rule 23(b)(1)(A) class action would be where individual lawsuits concerning the rights and duties of riparian landowners could result in inconsistent rulings. Rule 23, F.R.Civ.P. Advisory Committee Notes. There would be a substantial risk of different results if each owner of land along the river were allowed to bring a separate lawsuit regarding water rights.
 "Rule 23(b)(1)(B) class actions should be maintained if adjudications with respect to individual members of the class would, as a practical matter, be dispositive of the interests of other members or substantially impair the ability of the other members to protect their interests. An example would be where some shareholders seek to force a corporation to declare a dividend. Teply Whitten, Civil Procedure 690. If the plaintiff shareholders won, then the judgment would be dispositive of the interests of the remaining shareholders.
 "A class action under Rule 23(b)(2) is permitted when the party opposed to the class has acted or refused to act on grounds applicable to the entire class. Generally, injunctive relief and declaratory relief are the remedies under this type of class action. An example would be where a person was accused of unlawful discrimination against an entire class of people.
 "Rule 23(b)(3) allows class actions when there are common questions of law or fact among the class members and forming a class is superior to other methods of ending the legal dispute in a fair and efficient manner, e.g., when joinder of parties would be impracticable because of the large numbers of parties involved. Typically, the relief demanded is damages, and typical examples of a Rule 23(b)(3) class would be lawsuits involving consumer rights or anti trust violations. Typically, a Rule 23(b)(3) class is less cohesive than the other types of classes.
 "We note that in a class action brought under Rule 23(b)(3), the members of the class are entitled to 'opt out' of the class action and pursue a separate lawsuit. See Rule 23(c). Class members in a Rule 23(b)(1) or 23(b)(2) lawsuit do not have the choice of opting out of the class action."
Whether the prerequisites of Rule 23(a) have been satisfied in the Anderson class action is not an issue. Therefore, for purposes of this petition, we assume that the claimants are so numerous that joinder is impracticable (the record indicates that there may be as many as 292 members of the class); that there are questions of law or fact *Page 816 
common to the class; that the claims of the class representative, Jacqueline Anderson, are typical of the claims of the class; and that the class representative is able to fairly and adequately protect the interests of the class. Furthermore, although Judge Kittrell did not specify which part or parts of subsection (b) of Rule 23 he relied on in certifying the Anderson action as a mandatory class action, we assume that subsection (b)(1)(B) provided the basis for his decision. This assumption is based on the fact that in a class action certified under Rule 23(b)(3), the members of the class are expressly entitled to opt out of the class action and pursue separate actions. See Rule 23(c)(2). Class members in an action certified under subsection (b)(1) or (b)(2) do not have the right to opt out of the class action. Adams v. Robertson, supra. Our assumption is also based on the fact that the grounds for certifying a class action under either subsection (b)(1)(A) or (b)(2) do not appear to be applicable here. It is apparent from our review of the record and the briefs that Judge Kittrell was motivated to certify the Anderson action as a mandatory class action in part to gain some added control over his docket (which recently has seen a significant increase in multiple claimant tort cases) and in part out of concern that individual adjudications, such as the one the Hollands might obtain, with respect to the issue of punitive damages might, as a practical matter, be dispositive of the interests of the members of the class or that such individual adjudications would, at least, substantially impair the ability of the remaining members of the class to protect their interests. See Rule 23(b)(1)(B). There is no indication that Judge Kittrell was concerned that the prosecution of separate actions would create a risk of inconsistent adjudications. See Rule 23(b)(1)(A). Furthermore, Rule 23(b)(2) does provide for the certification of a mandatory class action upon a finding that the party or parties opposing the class had acted or refused to act on grounds generally applicable to the class, thereby making appropriate final injunctive relief or corresponding declaratory relief with respect to the class as a whole. However, only 1 of the 13 counts contained in Anderson's complaint requested injunctive relief. The predominant relief sought was a judgment for money damages. Certification under Rule 23(b)(2) is not proper unless the primary relief sought is injunctive or declaratory. Adams v. Robertson, supra. For these reasons, we believe the issue can be narrowed and restated as whether Judge Kittrell abused his discretion in certifying theAnderson action as a mandatory class action under Rule 23(b)(1)(B).
Rule 23(b)(1)(B) authorizes the maintenance of a mandatory class action only if the prosecution of separate actions by individual members of the class would create a risk of adjudications with respect to individual members of the class that would as a practical matter be dispositive of the interests of the other members not parties to the adjudications or substantially impair or impede their ability to protect their interests. Relying on the United States Supreme Court's recent decision in BMW of North America, Inc. v. Gore, ___ U.S. ___, 116 S.Ct. 1589, 134 L.Ed.2d 809 (1996), Fidelity contends that in tort litigation involving multiple claimants there is a limit on the amount of punitive damages that may be assessed against a defendant, under general principles of punitive damages law and constitutional due process. According to Fidelity, a trial court should have the discretion under Rule 23 to fashion a proceeding in a case where numerous individuals seek punitive damages from a defendant, so as to protect the rights of all those alleged to have been injured by the tortious conduct. Fidelity argues that in certain cases individual awards of punitive damages to members of an injured class could as a practical matter preclude the other member of the class from later recovering any compensatory or punitive damages from the defendant or that such individual awards of punitive damages could substantially impair or impede the ability of the other class members to protect their interests. Therefore, Fidelity argues, a trial judge should have the discretionary authority under Rule 23 to protect the interests of the class as a whole from the potential depletion of the constitutionally "limited fund" by those class members wishing to opt out of the class action and pursue their own individual actions. *Page 817 
The Hollands contend 1) that Ex parte First National Bank ofJasper, supra, provides no authority for Judge Kittrell's order; 2) that Fidelity produced no specific evidence indicating that it could afford to pay only a certain amount in damages and that such a specific showing was necessary to support the certification of the action as a Rule 23(b)(1)(B) class action under a "limited fund" theory; 3) that Judge Kittrell's order, which, in essence, separated the Hollands' claims for compensatory and punitive damages (the compensatory claims before Judge Byrd and the punitive claims before Judge Kittrell), violated Ala. Code 1975, § 6-5-440, which prohibits a plaintiff from splitting a cause of action and pursuing remedies in separate courts; 4) that the certification of theAnderson action as a mandatory class action violated their right to a trial by jury under § 11 of the Alabama Constitution; and 5) that the certification of the Anderson
action as a mandatory class action was in conflict withPhillips Petroleum Co. v. Shutts, 472 U.S. 797, 105 S.Ct. 2965,86 L.Ed.2d 628 (1985). The Hollands take the position that theAnderson action could be certified as a class action only under Rule 23(b)(3), which, as already stated, expressly carries with it the right on the part of class members to opt out and to pursue their own individual actions.
The idea of using a Rule 23(b)(1)(B) mandatory class action in a possible "limited fund" situation where the interests of multiple claimants seeking punitive damages may be prejudiced by judgments awarding punitive damages in prior related cases is not a new one, especially in the federal courts. See 3Newberg on Class Actions, §§ 17.3417.38 (3d ed. 1992); see, also, In re Dennis Greenman Securities Litigation,829 F.2d 1539 (11th Cir. 1987); In re School Asbestos Litigation,789 F.2d 996 (3d Cir. 1986); In re Diamond Shamrock Chemicals Co.,725 F.2d 858 (2d Cir. 1984), cert. denied, 465 U.S. 1067,104 S.Ct. 1417, 79 L.Ed.2d 743 (1984); In re Northern District ofCalifornia, Dalkon Shield IUD Products Liability Litigation,693 F.2d 847 (9th Cir. 1982), cert. denied, A.H. Robins Co.,Inc. v. Abed, 459 U.S. 1171, 103 S.Ct. 817, 74 L.Ed.2d 1015
(1983); In re Federal Skywalk Cases, 680 F.2d 1175 (8th Cir. 1982), cert. denied, Stover v. Rau, 459 U.S. 988,103 S.Ct. 342, 74 L.Ed.2d 383 (1982); Holmes v. Trustmark National Bank, [Ms. CV 195 CV 323 GR, January 11, 1996] (S.D.Miss. 1996); In re"Agent Orange" Product Liability Litigation, 100 F.R.D. 718
(E.D.N.Y. 1983), aff'd, In re Agent Orange Product LiabilityLitigation MDL No. 381, 818 F.2d 145 (1987), cert. denied,Pinkney v. Dow Chemical Co., 484 U.S. 1004, 108 S.Ct. 695,98 L.Ed.2d 648 (1988). According to Newberg, some, but not all, of the federal courts that have addressed the issue have been reluctant to certify a mandatory Rule 23(b)(1)(B) class action on the ground that multiple punitive damages claims would cause the defendant to have only limited funds available to pay claims. See Newberg, § 17.37. In addition to such potential legal barriers as the Anti-Injunction Act, 28 U.S.C. § 2283, which, with certain exceptions, prohibits federal courts from enjoining pending state court actions (not applicable in the present case), one of the primary problems encountered by various federal circuit courts in the use of Rule 23(b)(1)(B) in multiple-claimant "limited fund" tort cases has centered around the failure of trial judges to conduct adequate factual inquiries into the financial condition of the defendant, so as to ascertain whether a "limited fund" actually existed. See Inre Temple, 851 F.2d 1269 (11th Cir. 1988); In re Dennis GreenmanSecurities Litigation, supra; In re Bendectin ProductsLiability Litigation, 749 F.2d 300 (6th Cir. 1984); In reNorthern District of California, Dalkon Shield IUD ProductsLiability Litigation, supra; see, also, Wright, Miller Kane,Federal Practice and Procedure: Civil 2d § 1774, p. 443 (1986) ("the limited nature of the funds available to satisfy the individual claimants must be clear; a mere allegation that defendant has limited resources will be insufficient"). Other problems involve the discretionary nature of a punitive damages award and the speculation that inevitably accompanies any attempt on the part of a trial judge to predetermine whether the collective interests of the class in recovering punitive damages would be adversely affected if certain members of the class were allowed to opt out of the class action and pursue their own individual actions *Page 818 
for punitive damages. The following excerpt fromNewberg reflects some of the concerns that have arisen among the courts and the legal commentators with respect to the use of Rule 23(b)(1)(B) in multiple-claimant tort cases:
 "Various courts have certified classes on a mandatory basis under Rule 23(b)(1)(B) with respect to the punitive damages, some of which rulings were reversed on appeal. Some precedents and commentary state that because punitive damages are designed to punish the defendant for intentional or reckless wrongdoing, then punitive damages are properly considered in the aggregate as a single course of conduct when a mass tort is involved. Because the use of class actions in the mass tort area is a relatively recent development, most states have not yet addressed issues of punitive damages in this context. Without unanimity of views on either side, the legal debate between plaintiffs and defendants with respect to mandatory classes for punitive awards is unfolding as explained in the following section.
. . . .
 "As discussed elsewhere, defendants in mass tort cases have raised threshold arguments that plaintiffs are entitled to only one punitive damages award arising out of the same course of conduct, in contrast to multiple awards in individual actions, because otherwise defendants would be punished twice for the same conduct and be placed in double jeopardy. Some defendants have also questioned whether the underlying concept of punitive damages has any legitimate role in the modern mass tort litigation field.
 "In any event, defendants argue, multiple punitive damages awards potentially have the following effect: the aggregate of unlimited punitive damages awards may throw defendant into insolvency or bankruptcy, thus creating a limited fund for alleged victims of the mass tort. A potential point will be reached when defendants will have been punished enough by individual awards under principles of punitive damages law and constitutional due process.
 "Finally, defendants suggest that punitive damages awards and compensatory damages awards to subsequent suing plaintiffs are threatened as a practical matter because of the potential for a limited fund resulting from aggregate individual punitive awards or when the point is reached where defendants have been punished sufficiently. Accordingly, defendants argue, protection of class members in mass tort litigation involving punitive damages requires bringing all claims for punitive damages before one court with the certification of a mandatory class under Rule 23(b)(1)(B).
 "On the other hand, in opposition to certification of a mandatory punitive damages class, plaintiffs argue that multiple punitive damages awards are permissible, that limited fund potentials are entirely speculative, and that, as a practical matter, subsequently litigating plaintiffs will not be prejudiced because of the speculative issue of the point when defendants will have been sufficiently punished. Such speculation, plaintiffs argue, is inadequate to satisfy Rule 23(b)(1)(B) tests which call for mandatory class certification in appropriate circumstances in order to protect the interests of the class. To the contrary, plaintiffs argue, members of a plaintiffs' class may likely receive less than full recovery if a Rule 23(b)(1)(B) class is certified.
 "The arguments on both sides of this mandatory class for punitive awards debate have found receptive ears among the courts and commentators, and the issues remain unsettled.
. . . .
 "Under Rule 23, a mandatory class action can be maintained without exclusion rights only if the tests of Rule 23(b)(1) or (2) are satisfied. Rule 23(b)(2), which authorizes class certification in actions where injunctive relief is sought, is not available when damages, including compensatory and punitive damages, are the exclusive or primary relief sought. Rule 23(b)(1) consists of two subparts. First, Rule 23(b)(1)(A) authorizes class actions when the pursuit of individual actions will prejudice *Page 819 
defendant by exposure to inconsistent or varying adjudications from individual suits which would establish incompatible standards of conduct. It is settled that varying awards of damages in individual cases do not give rise to the prospect of incompatible standards of conduct which can be imposed on a defendant within the meaning of this section, so that Rule 23(b)(1)(A) is not available for mandatory class treatment of potential varying or inconsistent awards of punitive damages in individual cases arising from a mass tort. A Rule 23 mandatory class can therefore be certified, if at all, under the requirements of Rule 23(b)(1)(B).
 "Rule 23(b)(1)(B) focuses on situations where the interests of multiple claimants may be prejudiced by judgments in prior related cases, such as one involving multiple claimants to a limited fund which would otherwise be exhausted before all eligible claimants were able to share in that fund. While the existence of a limited fund is not the only circumstance that will satisfy Rule 23(b)(1)(B), the court must be satisfied that the interests of individual members of the class will be impaired or impeded 'as a practical matter' before the court is authorized under this section of Rule 23 to certify a mandatory, no opt-out class action.
 "Mandatory classes for related punitive damages claims arising from a mass tort have been certified under Rule 23(b)(1)(B) under the theory that the potential bankruptcy of a defendant from cumulative punitive damages awards creates a limited fund available for class members. Alternatively, because there is a hypothetical point at which defendant will have been punished sufficiently from the accumulation of punitive damages awards in related individual suits associated with a mass tort, class members suing later need the protection of a mandatory class in order to obtain their share of punitive awards.
 "As the following discussion shows, Rule 23(b)(1)(B) is not satisfied by speculation about the effect of uncertain future punitive awards on the future financial health of a defendant. Nor is there any constitutional requirement or practical method to establish on a hypothetical, speculative basis that future discretionary punitive awards in individual suits will result in an excessive total. A determination of prejudice to later-suing related claimants in this context is highly questionable. Under these circumstances, this premise of future prejudice to members of the class seeking punitive damages cannot support certification of a mandatory class under Rule 23(b)(1)(B).
 "Rule 23 specifically delineates, on a functional basis, only a narrow scope of class actions for mandatory, treatment — those classes involving situations in which it was commonly recognized that the adjudication of individual claims will materially affect the interests of the class or impose incompatible standards of conduct on defendant. While punitive damages claims do not present the spectrum of individual issues posed by unliquidated damages claims for unique injuries suffered by class members, punitive damages claims are not fungible or uniform, and the monetary results of the litigation of such claims in an individual or class action setting can be significantly different.
 "In reality, issues relating to punitive damages awards have both common and individual aspects. The opportunity for individual class members to obtain more generous punitive awards in individual suits than in class action litigation reflects the individual aspects of punitive damages. In the absence of a genuine limited fund, these hybrid issues involving punitive damages can be certified as class issues primarily to serve judicial economy, a classical objective in Rule 23(b)(3) voluntary class actions.
. . . .
 "Arguments that the possibility, likelihood, or probability of a limited fund may develop as a result of the accumulation of discretionary individual punitive damages awards will not withstand analysis on either a theoretical or practical level. Problems such as the uncertain state of the law on punitive damages in the various states, and the speculative nature of predictions on future discretionary punitive damages awards which will threaten the defendant's *Page 820 
practical ability to pay them, raise serious questions about the propriety of a mandatory Rule 23(b)(1)(B) class certification for such punitive damages claims."
Newberg, §§ 17.34, -.35, -.36, -.37.
The record indicates that Judge Kittrell did not conduct a hearing on the question of Fidelity's financial status; therefore, there has been no factual finding as to its ability to satisfy any judgments that may be entered against it. Federal circuit courts have consistently held that such an omission is fatal to the certification of a class action under Rule 23, F.R.Civ.P., when the existence of a "limited fund" turns on whether the defendant is financially able to pay all of the claims that have been made against it. See In re Temple, supra; In re Dennis Greenman Securities Litigation supra; In reBendectin Products Liability Litigation, supra; In re NorthernDistrict of California, Dalkon Shield IUD Products LiabilityLitigation, supra. We find the above-cited federal cases to be persuasive in interpreting the Alabama rule. Adams v.Robertson, supra. Therefore, we conclude that the certification of the Anderson action as a Rule 23(b)(1)(B) class action cannot stand, based on the record before us, unless, as Fidelity contends, the finding of a "limited fund" could be made without inquiring into its ability to satisfy the potential judgments. In this respect, Fidelity argues that the Fourteenth Amendment to the United States Constitution, not its financial statements, necessitates the finding of a "limited fund." Fidelity maintains that federal due process restrictions on awards of punitive damages create the possibility that early awards of punitive damages in individual cases against it will impair or impede the right of the class members to obtain their share of any punitive damages and that that possibility provides the basis for certification under Rule 23(b)(1)(B).[1]
It is true, as Fidelity points out, that the United States Supreme Court recently held in BMW of North America Inc. v.Gore, supra, that the Due Process Clause of the Fourteenth Amendment prohibits a state from imposing a grossly excessive punishment on a tortfeasor. Thus, we agree with Fidelity that it is no longer subject to doubt that there is a constitutional limit on the amount of punitive damages that may be awarded against a defendant for a tortious course of conduct affecting multiple claimants. However, BMW, which provides guidance on how to determine whether a punitive damages award is unconstitutionally excessive, necessarily focuses on the post-trial review process. The Supreme Court stated in BMW that two of the most important indicators of the reasonableness of a punitive damages award were the degree of reprehensibility of the defendant's conduct and the ratio of the punitive damages award to the actual harm inflicted on the plaintiff (which often involves a comparison of the punitive damages award to the compensatory damages awarded for emotional distress) or to the harm that was likely to result. Use of these two factors, and the approach taken by the Supreme Court in BMW, are based on the presumption that there has been a full trial on the merits, a factual finding that punitive damages are warranted, and a verdict awarding punitive damages. The Supreme Court has not, to our knowledge, approved a pretrial procedure in multiple-claimant tort cases that would allow a trial judge to initially predict whether a jury's award of punitive damages in a particular individual case (assuming that the trial court could make a reasonably reliable determination that such an award would even be made) would be so great as to approach or exceed the maximum punishment allowed under the Due Process Clause for the defendant's conduct, so as to impair or impede, as a practical matter, the ability of the members of an injured class to *Page 821 
recover compensatory or punitive damages. At least two federal circuit courts and two federal district courts have indicated that such a determination could theoretically be made, although those courts did not articulate exactly how a trial judge would go about making it. See In re Diamond Shamrock Chemicals Co., supra; In re School Asbestos Litigation, supra; Holmes v.Trustmark National Bank, supra; In re "Agent Orange" ProductLiability Litigation, supra. In any event, the better rule, we think, as shown by federal authorities previously cited, is that certification under Rule 23(b)(1)(B) should be made in a "limited fund" context only when the limited nature of the funds is sufficiently established. It appears to us that any pretrial certification procedure that could take such an inquiry (into the limited nature of punitive damages) beyond the realm of pure speculation would inevitably require the trial judge to conduct a rather extensive inquiry into the facts surrounding the defendants' conduct, in order to allow for even a good faith determination as to the reprehensibility of that conduct. This kind of preliminary factual inquiry to determine the risk that separate adjudications would, as a practical matter, substantially impair or impede the ability of the class to protect its interests, would be much broader than a preliminary investigation into the defendants' assets; rather, it would closely resemble the kind of pre-certification "mini-trial" on the merits that was condemned by the United States Supreme Court in Eisen v. Carlisle Jacquelin417 U.S. 156, 177-78, 94 S.Ct. 2140, 2152-53, 40 L.Ed.2d 732 (1974):
 "We also agree with the Court of Appeals that petitioner must bear the cost of notice to the members of his class. The District Court reached the contrary conclusion and imposed 90% of the notice cost on respondents. This decision was predicated on the court's finding, made after a preliminary hearing on the merits of the case, that petitioner was 'more than likely' to prevail on his claims. Apparently, that court interpreted Rule 23 to authorize such a hearing as part of the determination whether a suit may be maintained as a class action. We disagree.
 "We find nothing in either the language or history of Rule 23 that gives a court any authority to conduct a preliminary inquiry into the merits of a suit in order to determine whether it may be maintained as a class action. Indeed, such a procedure contravenes the Rule by allowing a representative plaintiff to secure the benefits of a class action without first satisfying the requirements for it. He is thereby allowed to obtain a determination on the merits of the claims advanced on behalf of the class without any assurance that a class action may be maintained. This procedure is directly contrary to the command of subdivision (c)(1) that the court determine whether a suit denominated a class action may be maintained as such '[a]s soon as practicable after the commencement of [the] action. . . .' In short, we agree with Judge Wisdom's conclusion in Miller v. Mackey International, 452 F.2d 424 (C.A.5 1971), where the court rejected a preliminary inquiry into the merits of a proposed class action:
 " 'In determining the propriety of a class action, the question is not whether the plaintiff or plaintiffs have stated a cause of action or will prevail on the merits, but rather whether the requirements of Rule 23 are met.' Id., at 427.
 "Additionally, we might note that a preliminary determination of the merits may result in substantial prejudice to a defendant, since of necessity it is not accompanied by the traditional rules and procedures applicable to civil trials. The court's tentative findings, made in the absence of established safeguards, may color the subsequent proceedings and place an unfair burden on the defendant."
Such a pre-trial procedure would place a trial judge in the extremely difficult position of having to make a prediction as to the maximum amount of punitive damages that the individual plaintiffs would be allowed to recover, taking into consideration the due process principles enumerated by this Court and by the United States Supreme Court. The trial judge would also have to make the same kind of prediction with respect to the total amount of punitive damages recoverable by the class as a whole, so that the two predicted *Page 822 
amounts could be compared and a determination could be made as to whether the potential individual punitive damages awards would as a practical matter adversely affect the ability of the class members to have a jury give meaningful consideration to their punitive damages claims. Making these determinations would be complicated further by the fact that the maximum amount of punitive damages allowed would often depend upon the amount of compensatory damages for emotional distress that could be awarded. As noted, the United States Supreme Court inBMW cited the ratio of the punitive damages award to the compensatory damages recoverable as an important indicator of the reasonableness of a punitive damages award. A trial judge is ill-suited to make a pre-trial factual determination (prediction) as to the amount of compensatory or punitive damages that a jury or juries may award. After considerable review, we conclude that the cumbersome nature of, and the inherent speculation that would be associated with, such a pre-trial certification procedure make Rule 23(b)(1)(B) inappropriate as a basis on which to certify a mandatory class action in a case such as Anderson.
For the foregoing reasons, we are compelled to hold that Judge Kittrell abused his discretion in certifying theAnderson action as a mandatory class action under Rule 23(b)(1)(B). In so holding, however, we recognize the need for every trial judge to be able to manage his or her docket efficiently, and we are not unappreciative of Judge Kittrell's efforts to do that in this case. With this in mind, we note that we see no impediment to basing the certification of theAnderson class action on Rule 23(b)(3). We also note that post-judgment review under BMW and Green Oil Co. v. Hornsby,539 So.2d 218 (Ala. 1989), is available to protect Fidelity against a total assessment of punitive damages in excess of that permitted by the Fourteenth Amendment. In light of our resolution of this issue, we pretermit any discussion of the other arguments made by the Hollands.
WRIT GRANTED.
HOOPER, C.J., and MADDOX, SHORES, KENNEDY, COOK, and SEE, JJ., concur.
BUTTS, J., concurs in the result.
[1] We note that it was necessary for Fidelity to make this rather awkward argument — that it is concerned about the ability of each of the class members to recover his or her share of any punitive damages — in order to preserve Judge Kittrell's certification of the action as a mandatory class action under Rule 23(b)(1)(B). Of course, no plaintiff is entitled to punitive damages, much less to any particular amount of punitive damages. This Court has held, however, that a plaintiff has the right under § 11 of the Alabama Constitution to have his punitive damages claim determined by a jury, if a jury trial is requested. Henderson v. Alabama Power Co.,627 So.2d 878 (Ala. 1993). It is that right to which Fidelity is apparently referring.