On Applications for Rehearing in Case 1960410 and on Initial Appellate Review in Cases 1960455 and 1960589
The opinion of April 4, 1997, in case 1960410 is withdrawn and the following opinion, dealing with that case and with two related appeals, is substituted therefor.
These proceedings (one petition for the writ of mandamus and two appeals) were brought in this Court to challenge an order of Judge Eddie Hardaway, Jr., of the Greene County Circuit Court, amending a class-action certification in a dispute that arose out of the following facts:
On August 3, 1995, Aubrey W. Tidmore and others (collectively "Tidmore") commenced an action against State Mutual Insurance Company in the Greene County Circuit Court. The complaint was filed by Tidmore "individually and . . . on behalf of an opt-out class," as provided by Ala. R. Civ. P. 23(b)(3) (emphasis added). The class was described as "[a]ll persons who have procured the VANISHING PREMIUM DIVIDEND OPTION/VANISHING PREMIUM POLICY from defendants based upon the misrepresentation that the premium would no longer be due upon the expiration of a certain number of years at which time the policy would then pay for itself."
In early February 1996, Carol Bell and others, through the same counsel, commenced in the Marengo County Circuit Court against State Mutual another action containing substantially identical allegations. On February 12, 1996, Tidmore moved the Greene County Circuit Court to certify a non-opt-out class. On February 15, 1996, these two actions were consolidated in the Greene County Circuit Court. The following day, Bell and Tidmore filed a joint "first amended complaint" in Greene County. The amended complaint sought, for the first time in a pleading, certification of a "non-opt-out" class, pursuant to Ala. R. Civ. P. 23(b)(1)(A) and (B) and (b)(2).
On February 21, 1996, the Greene County Circuit Court certified a non-opt-out class, pursuant to Rule 23(b)(1)(A) and (b)(2). Subsequently, a prospective settlement agreement was reached in the Tidmore action, and, on September 13, 1996, the Greene County Circuit Court "preliminarily approved" the proposal, subject to a final determination after a "final settlement hearing," which the court scheduled for November 25, 1996. The preliminary approval was evidenced by a court order, which, in addition, modified the class to exclude "any person who was a named plaintiff in any separate lawsuit filed on or before August 3, 1995, which alleged fraud, concealment, failure to disclose or misrepresentation in connection with the purchase, sale or issuance of any one or more State Mutual policies."
Meanwhile, on January 24, 1996, that is, before Tidmore movedto certify a class in the Greene County action, Betty J. Payne and others (collectively "Payne") filed against State Mutual in the Hale County Circuit Court a complaint containing no
class-action allegations. State Mutual was served with the complaint on February 8, 1996.
On March 7, 1996, after Tidmore had amended his complaint to include non-opt-out class allegations and had successfully sought the certification of a non-opt-out class, State Mutual moved the Hale County Circuit Court to abate Payne's action, pursuant to Ala. Code 1975, § 6-5-440, which provides:
 "No plaintiff is entitled to prosecute two actions in the courts of this state at the same time for the same cause and against the same party. In such a case, the defendant may require the plaintiff to elect *Page 210 
which he will prosecute, if commenced simultaneously, and the pendency of the former is a good defense to the latter if commenced at different times."
(Emphasis added.)
On July 29, 1996, the Hale County Circuit Court entered an order dismissing with prejudice Payne's action. On August 29, 1996, however, it vacated the order of dismissal and reinstated the action. On September 30, 1996, Payne filed in the Greene County Circuit Court a "Motion for Amendment of Class Definition and Limited Intervention." Therein, Payne sought an amendment of the "class definition to exclude persons who had pending actions filed prior to the certification of the class on February 23, 1996." As the sole ground for this motion, she contended that such persons had "a constitutional right under the United States Constitution Fifth, Seventh and Fourteenth Amendments (due process, trial by jury and equal protection) to pursue their prior pending action." (Emphasis added.) She further argued:
 "While undoubtedly certification of a . . . Rule 23(b)(2) class may prevent subsequent actions filed after date of certification, it cannot and should not defeat the rights of persons such as the movants who have filed their action prior to the motion to certify the class and the order certifying the class. To hold otherwise would allow the class representatives and defendant to usurp or negate actions filed prior to class certification thereby defeating movants' constitutional rights."
(Emphasis added.)
State Mutual and Tidmore opposed the motion, contending that Tidmore's putative class action, which was filed on August 3, 1995, "is a good defense," as that phrase is used in § 6-45-440, to Payne's action, which was filed on January 24, 1996, notwithstanding the fact that the Tidmore action was not certified as a class action until February 21, 1996 — well after Payne's individual action was commenced. State Mutual and Tidmore also relied on dictum in Ex parte First Nat'l Bank ofJasper, 675 So.2d 348 (Ala. 1995) ("FNB of Jasper I"), in which this Court denied mandamus petitions seeking the abatement of two of six actions commenced on the same day, all containing substantially identical class allegations, but with different named representatives.
On November 18, 1996, Judge Hardaway entered an order granting Payne's motion and excluding Payne from the Greene County action. In his order of November 18, 1996, Judge Hardaway addressed the contentions of Tidmore and State Mutual based on § 6-5-440 and FNB of Jasper I:
 "This matter is before the court on a motion by several individuals seeking limited intervention and an order excluding them from a Rule 23(b)(2) class previously certified.
 "In brief, the instant class action was filed August 3, 1995, and on February 15, 1996, a Marengo County Circuit Court case with virtually identical claims against [State Mutual] was transferred and consolidated herewith. On January [24], 1996, movants filed a consolidated but individual complaint in the [Hale] County Circuit Court against [State Mutual] and asserted claims similar to those presented here. On February [21], 1996, this court certified a Rule 23(b)(2) mandatory non-opt-out class in this action which, by definition, included movants.
 "Movants argue they should be excluded from the class because their [Hale] County action was pending before class certification occurred in this action. They cite no case law to support their position and maintain this is an issue of first impression.
 "The [other] parties to this action disagree and insist movants are locked into the certified class and invited the court to review . . . Ex parte First National Bank of Jasper [, 675 So.2d 348
(Ala. 1995)]. That case is inapplicable.
 "In [First National Bank of Jasper,] supra, the same lawyer filed identical, competing, class action lawsuits in three separate counties on the same day against the same defendants. A bank defendant argued that under those circumstances it should not be required to defend against six simultaneous class actions, and [that] *Page 211 
all the actions should be abated except the one filed first.
 "The Court denied the relief requested by the bank on the ground that class certification had not yet occurred in [any] of the cases. . . .
"In dicta, the Court . . . [stated] as follows:
 " 'Once a certification occurs in any court, that certification abates all other pending actions and the named plaintiffs in [the] other action[s] would then become members of the certified class in the court in which the certification has occurred.' (Emphasis added [by Judge Hardaway]).
 "The above quoted language clearly speaks to competing class actions; otherwise, the phrase, 'named plaintiffs,' is meaningless. In addition, the facts before that court involved six competing class actions. The facts here do not involve competing class actions.
 "Nevertheless, [First National Bank of Jasper,] supra, made clear that prior to certification no basis for abatement of similar actions exists. Movant had individual cases pending in a sister circuit at the time certification was granted in this case. This court sees no basis for creating a thicket of due process and constitutional issues by subsuming those individual cases through a subsequent certification by this court.
 "The motion for limited intervention is granted and movants are excluded from the certified class."
(Emphasis added except as indicated.)
The trial court did not address other arguments made by State Mutual for denial of Payne's motion. Specifically, State Mutual also argued that the "totality of the circumstances" weighed against Payne's exclusion from the class. On November 25, 1996, the trial court certified that order as a final judgment, pursuant to Ala. R. Civ. P. 54(b).
State Mutual and Tidmore appealed from the November 25, 1996, judgment entered pursuant to Rule 54(b). Cases 1960455 and 1960589 represent the appeals of State Mutual and Tidmore, respectively. Also, because of the imminence of the "final settlement hearing," which was, by then, scheduled for January 13, 1997, Tidmore and State Mutual filed on December 16, 1996, a petition for a writ of mandamus directing Judge Hardaway to vacate the November 18, 1996, order excluding Payne from the Tidmore class action. On January 13, 1997, the fairness hearing was rescheduled for April 24, 1997.
Because of the imminence of the fairness hearing, this Court attempted to expedite a disposition of this dispute by way of the mandamus petition (case 1960410). Thus, on April 4, 1997, we issued an opinion in case 1960410, based on the relief sought in the petition. In that opinion, we stated:
 "[W]here two actions are pending against the same defendant by different named plaintiffs, regardless of whether the action sought to be abated contains class allegations, 'until a certification occur[s] somewhere, it [is] premature to consider the application of § 6-5-440.' The logic of this conclusion is, of course, that until a class is certified that would include the plaintiffs who are pursuing individual claims in a separate action, the plaintiffs bringing their claims individually
are not plaintiffs in the class action, any more than the named plaintiffs in the potential class action are parties to the other action. Therefore, until a certification occurs, the plaintiffs suing individually are not parties in the potential class action and are not within the purview of § 6-5-440.
 "Judge Hardaway correctly concluded that it is the certification that triggers the application of § 6-5-440, not the mere filing of the action. In other words, actions commenced after the certification are subject to § 6-5-440, but those filed before the certification are not. It is to an action filed after the certification of a pending class action that the § 6-5-440 phrase 'the pendency of the former' refers. At the time of certification, the pendency of the class action becomes 'a good defense to the latter,' that is, to any action commenced after the certification."
(Emphasis original.) We qualified these remarks, however, with a caveat, namely, that our consideration of this case was limited *Page 212 
strictly to the applicability of § 6-5-440, which, State Mutual conceded, was "the crux" of its argument for relief set forth in its petition, State Mutual Insurance Company's Reply toRespondents' Answer Opposing Petition for Writ of Mandamus, at 6.
On April 7 and 14, 1997, State Mutual and Tidmore, respectively, applied to this Court for a rehearing. In its application, State Mutual contended that on the original submission of this case it had overlooked federal caselaw involving relation-back principles. More specifically, it argued that once the Tidmore action was certified, the certification related back, that is, applied retroactively, to August 3, 1995, the date the Tidmore action was filed. Under this principle, State Mutual insisted, the Tidmore action legally and effectively predated Payne's action. Thus, it contended, contrary to this Court's analysis of the effect of the filing sequence in this case, the Tidmore action was "a good defense to the latter" — the Payne action — within the meaning of § 6-5-440. State Mutual contends that the relation-back principle must apply if § 6-5-440 is "ever going to work" in conjunction with class-action procedure. Payne contends that § 6-5-440 has no application to a case such as this one, which, instead of involving competing class actions, as did FNB of Jasper I, involves a class action and one or more individual actions.
These arguments were both supported and opposed, by a number of amici curiae, who subsequently filed briefs, including the Alabama Defense Lawyers Association; a group of law firms purporting to be "involved in dozens of class actions brought on behalf of plaintiff classes" (the "Group"); the law firm of Donaldson Guin, L.L.C.; and Richard Arrington, as mayor of the City of Birmingham. In addition to the problems peculiar to this case, the amici pointed out a number of problems affecting current Alabama class-action procedure, generally. In essence, the problems involve a practice the parties and amici describe as "claim jumping." The Group describes the problem as follows:
 "[A] plaintiff could file a purported class action in Jefferson County, Alabama, and spend 12 months preparing the case for a class action hearing, but prior to the conduct of that hearing, another plaintiff could file an action in another Alabama county copying the exact same Jefferson County complaint, but substituting in a new named plaintiff and getting a different Alabama Circuit Court to certify the newly filed action as a class action. Under this Court's [April 4, 1997,] holding in the instant case, the certification in the second filed action would abate the previously filed action and negate 12 months' work that had been done toward preparing for the class certification hearing."
Amicus Curiae Brief [Filed by the Group], ¶ 2.
We do not agree with the Group that the holding of the April 4, 1997, opinion would have necessitated this result. That result would be necessitated, however, by the strict application of the following principle, which we stated inFNB of Jasper I:
 "The abatement statute [§ 6-5-440] is controlling, but it must be interpreted in the light of the class action procedures outlined in Rule 23 . . . .
 "Once a certification occurs in any court, that certification abates all other pending actions and the named plaintiffs in the other actions would then become members of the certified class in the court in which the certification has occurred."
675 So.2d at 349 (emphasis added). We do not know whether "claim jumping" is a problem that is actual and present, or only theoretical and potential. We do know, however, that sinceFNB of Jasper I, a number of class actions have come to us in which the defendant sought to abate a parallel action on the basis of § 6-5-440. See Ex parte DeArman, 694 So.2d 1288 (Ala. 1997); Ex parte Holland, 692 So.2d 811, 817 (Ala. 1997); andFirst Nat'l Bank of Jasper v. Crawford, 689 So.2d 43 (Ala. 1997) ("FNB of Jasper II"). Also clear is the fact that class-action practice in Alabama has been in a state of confusion ever since FNB of Jasper I was decided. Thus, this present case presents two issues: (1) whether § 6-5-440 applies to this case — indeed, to class actions in general; and, (2) if not, then whether the trial court, nevertheless, abused its discretion in amending the certification to exclude Payne. These *Page 213 
issues require us to revisit our conclusions in FNB of Jasper I
and FNB of Jasper II regarding class actions and § 6-5-440. That inquiry requires, in turn, a reexamination of the historical antecedents of § 6-5-440 and contemporary class actions.
 I.
Section 6-5-440, as initially codified in Ala. Code 1907, § 2451, was "a transcript of section 4331 of the Civil Code of Georgia." Ex parte Dunlap, 209 Ala. 453, 455, 96 So. 441, 442
(1923). See current version at Ga. Code Ann. § 9-2-5(a) (Michie 1982). However, these statutes merely codified the principle expressed in the common-law maxim: "Nemo debet bis vexari (siconstet curiae quod sit) pro una et eadem causa," that is: "No man ought to be twice troubled or harassed (if it appear to the court that he is), for one and the same cause." O'Barr v.Turner, 16 Ala. App. 65, 67-68, 75 So. 271, 274 (1917), cert.denied, 200 Ala. 699, 76 So. 997 (1917). This rule was well established in Alabama long before it was first codified in Ala. Code 1907, § 2451. In Foster v. Napier, 73 Ala. 595 (1883), for example, this Court explained:
 "The doctrine is thus stated in 1 Bac. Ab. 28, M.: 'The law abhors multiplicity of actions; and, therefore, whenever it appears on record, that the plaintiff has sued out two writs against the same defendant, for the same thing, the second writ shall abate; for if it were allowed that a man should be twice arrested, or twice attached by his goods for the same thing, by the same reason he might suffer in infinitum; and it is not necessary that both should be pending at the time of the defendant's pleading in abatement; for if there was a writ in being at the time of suing out the second, it is plain the second was vexatious and ill ab initio.' "
Foster v. Napier, 73 Ala. 595, 603 (1883) (quoting 1 M. Bacon,A New Abridgment of the Law 28 (1843)). In fact, the rule was well established as early as 1461, for it was thoroughly discussed and applied in Y.B. 39 Henry VI, pl. 12 (1461), casequoted in toto, Commonwealth v. Churchill, 5 Mass. 174 (1809); see also Sparry's Case, 5 Coke 61a., 77 Eng. Rep. 148 (K.B. 1591).
Under this rule, the priority of filing is crucial. That is because "a prior action may be pleaded in abatement of asubsequent one, [but] not vice versa." Johnson v. Brown-ServiceIns. Co., 293 Ala. 549, 552, 307 So.2d 518, 521 (1974) (emphasis in original). Because the motion to stay or abate thesecond action was filed in the court entertaining the second action, the question of the court's power to enjoin or stay proceedings already pending in a sister court was seldom, if ever, presented. Although class actions are at least as deeply rooted in Anglo-American jurisprudence as the abatement rule, the two principles differ in a number of important respects.
 II.
The first notable example of a class-action device was recorded in 1309. 30 Selden Society, Select Bills in Eyre 137,Channel Islands, 2 Edward II (1309) (1914) (the "ChannelIslanders' case"). In that year, disputes arose between a large number of the inhabitants of the islands of "Guernsey, Jersey, Sark and Alderney," and Sir Otis de Grandison, who held the islands of King Edward II. Id. at 137; see also 6 G. Cokayne,The Complete Peerage 69-70 (1926). A number of bills were "delivered to the Justices [of the Eyre, who were] assigned to hear and determine the complaints of certain of the islanders."Channel Islanders' case, at 137. The central issue in the majority of the bills concerned the value, or exchange rate, of currency in which payment was due to be made to Grandison, or those holding titles or commissions under him, for fines or rents owed by the islanders. Id. at 137-47, Nos. 158-72.
One of those bills, in particular, was delivered in the names of "John the mason, Piers the mason, Piers Howel, Robert the tawer, Samson Lemoeine, Andrew Lesant [and] Thomas Amend,for themselves and their parceners." Id. 139, No. 161 (emphasis added). Subsequently, "the complainants were told that they must appear coram Rege Ubicunque . . . and that a single complainant should argue the case for all, and that the determination of the King's Council in that one case would govern the judgment in all *Page 214 
similar complaints." Id. at xxxvii. This order essentially "certified a class" and enjoined the prosecutions of allpreviously commenced actions. For a discussion of the ChannelIslanders' case and similar examples of early, proto-class actions, such as are recorded in the years 1398, 1399, 1465, and 1565, see Marcin, Searching for the Origin of the ClassAction, 23 Cath. U.L.Rev. 515 (1974) (discussing 10 Selden Society, Select Cases in the Court of Chancery (1364-1471) 40,de Bridsall v. de Bulmer (No. 36, 1398) (1896); id. at 44,Hilgay v. Wasnam (No. 41, 1399); id. at 150, Maire v. Stockton
(No. 144, 1465); Devyke v. Petevyn, Acta Cancellariae orSelections from the Records of the Court of Chancery, No. LX, at 369 (1847)).
Before the adoption of contemporary rules of civil procedure, the proto-class action device was known as "the bill of peace in equity," Z. Chafee, Jr., Bills of Peace with MultipleParties, 45 Harv. L.Rev. 1297, 1297 (1932), or a bill "for the prevention of a multiplicity of suits." Hamilton v. AlabamaPower Co., 195 Ala. 438, 444, 70 So. 737, 739 (1915). That device enabled a defendant against whom a multitude of actions at law were threatened — or already pending — to compel the resolution of those claims in one proceeding in equity.[1] Id. See also, Weinstein, Revision of Procedure: Some Problems in ClassActions, 9 Buff. L.Rev. 433, 433-34 (1959-60). Thus, equity courts possessed the power to "reach all the parties in the state and enjoin them from starting or pressing actions anywhere, or . . . enjoin all the actions except one." Chafee,supra, at 1301. Comparison of the abatement rule and the class action device in their historical settings reveals three fundamental reasons why their modern counterparts should be kept separate and distinct.
 III. A.
First, the abatement rule and the class action have developed and existed simultaneously, yet independently of one another, since relatively ancient times. Neither the parties nor theamici have cited examples of the incorporation in any other jurisdiction of the abatement rule with the class-action device, and our own research has disclosed no example. This fact, alone, suggests that arguments for incorporation ought to be viewed with caution, for if "the mere fact that a path is a beaten one is a persuasive reason for following it," Jackson,Full Faith and Credit — The Lawyer's Clause of theConstitution, 45 Col. L.Rev. 1, 26 (1945), the converse is also true. Indeed, our own attempt to incorporate, or fuse, the abatement rule with class-action procedure — as we did in FNBof Jasper I — has, thus far, resulted in chaos.
 B.
Second, the rationale for the abatement rule is not consistent with the realities of class-action practice. For example, the basic premise of § 6-5-440 is that whenever a plaintiff commences two actions "against the same defendant, for the same thing," the second action is deemed in law to have been commenced "vexatious[ly]" and oppressively. Foster v.Napier, 73 Ala. 595, 603 (1883). However, Payne contends that represented class members are not "parties" in the ordinary sense of the word. We agree with this characterization. Certainly, they are not parties within the meaning of §6-5-440. Indeed, in most cases, the class-member plaintiffs,themselves, will not know that another action exists against the same defendant or that they have become plaintiffs in it until certification has occurred in the second action. Obviously, those plaintiffs did not commence the second action.A fortiori, it cannot be said that they commenced the second action vexatiously or oppressively within the meaning of §6-5-440.
In this case, for example, no evidence has been produced, or contention made, that Payne knew of the pendency of Tidmore's action before she filed her own action in Hale County on January 24, 1996. Indeed, the evidence suggests that she heard of the Tidmore *Page 215 
more action for the first time on March 7, 1996, when State Mutual, having obtained, on February 21, the certification of a non-opt-out class, moved the Hale County Circuit Court to abate Payne's action. That the fundamental rationale underlying § 6-5-440 does not apply to facts such as these is self-evident.
It does not matter whether the competing actions are bothclass actions, as in FNB of Jasper I, or one class action and one or more individual actions, as in this case. In FNB ofJasper I, for example, at the time First National Bank of Jasper ("FNB"), the defendant in six putative class actions commenced on the same day in three separate counties, sought the abatement of two of those actions, it is doubtful that many, or any, of the absent putative class members knew thatany litigation was proceeding on their behalf. We reiterate that the rationale of § 6-5-440 has no force in the class-action context.
 C.
Third, if § 6-5-440 applied to class actions, or, as we stated in FNB of Jasper I, "was controlling," 675 So.2d at 349 (emphasis added), it would often require — as to the plaintiffs in the individual action — the abatement of theclass action. This is so because, in many cases, by the time a complaint containing class allegations is filed, complaints without class allegations will have already been filed against the same defendant. Indeed, the class action was developedprecisely for the purpose of "subsuming . . . individual cases" — whether actually pending or threatened — into one representative action. Under the rationale of FNB of Jasper I
and FNB of Jasper II, once certification occurred in a class action, the plaintiffs in an individual action commenced before
the class action would also become plaintiffs in the class action, thus triggering the application of § 6-5-440 to abatethe class action, as to the plaintiffs in the individual action. A scenario with this potential most recently occurred in Ex parte Holland, 692 So.2d 811 (Ala. 1997).
Holland arose out of individual claims by Mitchell and Tammy Holland against Auto Mart of the Southeast ("Auto Mart"), and Fidelity Financial Services, Inc. ("Fidelity"), on the basis of a complaint and counterclaim, respectively. Id. at 813. It also involved a class action commenced by Jacqueline Anderson against Auto Mart and Fidelity, containing claims similar to those set forth by the Hollands. Id. at 813. Anderson's complaint, which contained the class allegations, was filed approximately one year after the Hollands' complaint and counterclaim were filed. Id.
Nevertheless, as soon as Anderson's action was certified as a class action, Fidelity "moved to stay the Hollands' claim against it, pending resolution of the Anderson class action."Id. The authority on which it relied for this relief was FNB ofJasper I. 692 So.2d at 813.
When the Hollands subsequently moved to opt out of the class action, "Fidelity . . . moved to declare the Anderson class action a mandatory action . . . with respect to the issue of punitive damages." Id. It contended "that there was a 'limited fund' from which the class members could recover and that it was preferable to have everyone with a claim against it before the trial court." Id.
Judge Kittrell granted Fidelity's motion, with an order stating in pertinent part: "[T]he plaintiffs in the case ofHolland v. Fidelity set for trial . . . before the Honorable Robert L. Byrd, shall be allowed to proceed insofar but only insofar as their claims relate to compensatory damages, and any claim for punitive damages shall be considered in the instant class action[, based on Rule 23(b)(1)(B)]."[2] 692 So.2d at 814. After this order, Judge Byrd, the trial judge as to the Hollands' individual claims, "entered an order . . . abating the Hollands' actions, pending resolution of the Anderson class action." 692 So.2d at 814.
The Hollands sought a writ of mandamus vacating (1) Judge Kittrell's order, which essentially enjoined their individual claims in Judge Byrd's court insofar as they involved *Page 216 
punitive damages, and (2) Judge Byrd's order, which stayed their individual claims in his court. Id. at 812-13. This Court granted the petition. However, it did so on the ground that Judge Kittrell had made no factual findings sufficient to determine whether a Rule 23(b)(1)(B) class was needed in order to preserve a "limited fund" of punitive damages, and that, in any event, any pre-trial procedure that might be used to "predict" the outcome of damages claims against a class-action defendant would be too "cumbersome" and "speculat[ive]" to support a Rule 23(b)(1)(B) limited-fund certification. Id. at 822.
As Holland demonstrates, the problems presented by cases like this one cannot be solved merely by construing § 6-5-440 so that certification in the class action would "relate back to the time of filing" of that action, as State Mutual proposes. In other words, because the Hollands' individual claims were filed before the class action, a relation-back argument made in that case would have been entirely immaterial and ineffective as a vehicle for the abatement of the individual claims — the result State Mutual and Tidmore desire.
 D.
A fourth reason why § 6-5-440 should not apply to class actions is that the abatement statute is simply redundant. It is redundant because the power of a court entertaining a class action to stay competing actions is a natural and essential feature of the broad equitable powers inherent in class actions.
The scope of this injunctive power under Rule 23 has been more fully explored and defined by the federal courts than by Alabama state courts. This fact is best explained, perhaps, by the fact that it has been "standard practice for federal
courts, pursuant to [Fed.R.Civ.P.] 23, to exercise jurisdiction over national class actions. See, e.g., Zeffiro v. First Pa.Banking Trust Co., 96 F.R.D. 567 (E.D.Pa. 1983)." In reAsbestos School Litigation, 104 F.R.D. 422, 437 (E.D.Pa. 1984) (emphasis added), affirmed in part and vacated in part on othergrounds, 789 F.2d 996 (3d Cir.), cert. denied sub nom. CelotexCorp. v. School Dist. of Lancaster, 479 U.S. 852,107 S.Ct. 182, 93 L.Ed.2d 117 (1986). Federal courts routinely exercise the power to enjoin the prosecution of all competing actions, whether pending or future.
The application of this power was illustrated in White v.National Football League, 822 F. Supp. 1389 (D.Minn. 1993),aff'd, 41 F.3d 402 (8th Cir. 1994), cert. denied sub nom. Jonesv. National Football League, 515 U.S. 1137, 115 S.Ct. 2569,132 L.Ed.2d 821 (1995). The action involved in that case began with a complaint against the National Football League ("NFL"), "and its twenty-eight member clubs," filed by "five named plaintiffs . . . on behalf of themselves and all other past, present, and future NFL players similarly situated." 822 F. Supp. at 1395. The action "challenge[d] various NFL player rules," id. at 1394, and sought injunctive relief and damages. Id. at 1395.
After the parties "reached a tentative agreement to settle," the court certified, pursuant to Fed.R.Civ.P. 23(b)(1), a non-opt-out plaintiff class described as:
 "(i) all players who have been, are now, or will be under contract to play professional football for an NFL club at any time from August 31, 1987 to the date of final approval of the settlement . . . and the determination of any appeal therefrom, and (ii) all college and other football players who, as of August 31, 1987, through the date of final approval of the settlement . . . and the determination of any appeals therefrom, have been, are now, or will be eligible to play football as a rookie for an NFL team."
822 F. Supp. at 1395. Included within this class were plaintiffs in 17 other actions pending in United States district courts throughout the nation, including courts in Arizona, California, Louisiana, and Minnesota. Id. at 1433, n. 73.
Eventually, the parties moved for "final approval of the Stipulation and Settlement Agreement." Id. at 1397. In connection with those motions, the defendants moved to enjoin further prosecutions of the actions of the plaintiffs in those 17 competing actions. Id. at 1433. The court granted the motion to enjoin, in the following terms: *Page 217 
 "All members of the plaintiff class in the present action are permanently enjoined from further pursuit or prosecution of the above listed actions, or any other actions now pending that purport to challenge the same player practices at issue here, or challenge the Stipulation and Settlement Agreement in this action. In addition, all members of the plaintiff class are permanently enjoined from initiating any such actions in the future. The court shall also retain jurisdiction over this action to effectuate and enforce the terms of the injunctions and Stipulation and Settlement Agreement . . . ."
Id. at 1437 (emphasis added). In entering the injunction, the court rejected contentions that it lacked jurisdiction to enjoin the competing actions. Specifically, it explained:
 "The court further concludes that it has jurisdiction, pursuant to the All-Writs Act, 28 U.S.C. § 1651,* to enjoin the various lawsuits subject to defendants' motions. See, e.g., Kerotest Mfg. Co. v. C-0-Two Fire Equip. Co., 342 U.S. 180, 183-84, 72 S.Ct. 219, 221, 96 L.Ed. 200 (1952) (federal courts have 'an ample degree of discretion' in determining how best to administer 'multiple litigation in the federal judicial system', and such discretion includes the power to stay pending federal court actions); . . . Robertson v. National Basketball Ass'n,413 F. Supp. 88, 90 (S.D.N.Y. 1976) (enjoining separate federal lawsuit filed by an individual class member in order to protect 'the jurisdiction of this court to determine this action, either by trial or by court-approved settlement'). Under the Act, the court may also enjoin actions that were filed, or allegedly filed, before the present action. See Kerotest, 342 U.S. at 183, 72 S.Ct. at 221 (federal courts are not bound by rigid doctrines, such as the 'first to file' rule because '[w]ise judicial administration, giving regard to conservation of judicial resources and comprehensive disposition of litigation, does not counsel rigid mechanical solution of such problems'). The court concludes that it has jurisdiction to enjoin those lawsuits pursuant to the All-Writs Act.
". . . .
 "In fact, there is ample authority for the proposition that the court has jurisdiction to enjoin other actions even if the parties were not members of the White class. See e.g., United States v. New York Tel. Co., 434 U.S. 159, 174, 98 S.Ct. 364, 373, 54 L.Ed.2d 376 (1977) ('the power conferred by the [All-Writs] Act extends, under appropriate circumstances, to persons who, though not parties to the original action or engaged in wrongdoing, are in a position to frustrate the implementation of a court order'); In re Baldwin-United Corp., 770 F.2d 328, 338 (2d Cir. 1985) ('[a]n important feature of the All-Writs Act is its grant of authority to enjoin and bind nonparties to an action when needed to preserve the court's ability to reach and enforce its decision in a case over which it has proper jurisdiction') (citations omitted). Accordingly, the court rejects any claim that the motions to enjoin must be denied because it lacks personal jurisdiction over any party.
822 F. Supp. at 1433-34 (emphasis added; some footnotes omitted).
Similarly, in In re Joint Eastern Southern DistrictAsbestos Litig. (Eagle-Picher), 134 F.R.D. 32, 37 (E.D.N.Y. 
S.D.N.Y. 1990), the defendant, Eagle-Picher Industries, Inc. ("Eagle-Picher"), sought certification of a class consisting of "all persons who currently, or may at any time in the future, assert or claim to have asbestos-related personal injury or wrongful death claims against [it] based upon exposure to its asbestos-containing products." Id. at 34. Explaining that "the All Writs Act permits [federal] courts to certify a national class action and to stay pending federal and state cases brought on behalf of class members," id. at 37, United States District Judge Weinstein certified a non-opt-out class and "enjoined all asbestos litigation pending against Eagle-Picher, with exceptions, and restrained any new proceedings *Page 218 
from being instituted against the company." Id. at 39-40.[3]
Although White and Eagle-Picher discussed the source of the court's injunctive power in the context of 28 U.S.C. § 1651 — the All Writs Act — § 1651 is merely a codification of the "long recognized power of courts of equity to effectuate their decrees by injunctions or writs of assistance." Wesch v.Folsom, 6 F.3d 1465, 1470 (11th Cir. 1993), cert. denied subnom. Sinkfield v. Wesch, 510 U.S. 1046, 114 S.Ct. 696,126 L.Ed.2d 663 (1994). This power is "coextensive with [the court's] jurisdiction over the subject matter." Hamilton v.Nakai, 453 F.2d 152, 157 (9th Cir. 1971), cert. denied,406 U.S. 945, 92 S.Ct. 2044, 32 L.Ed.2d 332 (1972).
"[F]ederal case law on class actions [is] persuasive authority for the interpretation of our own Rule 23." Adams v.Robertson, 676 So.2d 1265, 1268 (Ala. 1995), cert. dismissed asimprovidently granted, 520 U.S. 83, 117 S.Ct. 1028,137 L.Ed.2d 203 (1997). Also, a United States district court's exercise of jurisdiction over a national class action, pursuant to Rule 23 and the All Writs Act, is analogous to an Alabama state circuit court's exercise of jurisdiction over a state-wide class action. Cf. Note, Consumer Class Actions with a MultistateClass: A Problem of Jurisdiction, 25 Hast. L.J. 1411, 1435 (1974). The circuit courts of this state have the power "toissue such writs as may be necessary or appropriate toeffectuate [their] powers." Ala. Const. 1901, Amend. 328, § 6.04 (emphasis added). "[T]he inherent power of a court of equity to effectuate its own decrees," Ark-Ala Lumber Co. v.Powell, 213 Ala. 591, 592, 105 So. 588, 588 (1925), is, as to Alabama state courts, expressly acknowledged in § 6.04. Thus, the circuit courts of this state, like their federal counterparts, possess the equitable power inherent in class actions — without regard to § 6-5-440 — to enjoin the prosecution of any action that would tend to interfere with the exercise of jurisdiction over the class actions before them. Section 6-5-440, therefore, adds nothing to the power of a class-action court to protect its jurisdiction.
Although the proper exercise of this power does not turn on whether the class-action complaint was the first complaint filed, or on whether a class was certified before a complaint commencing a competing individual action was filed, the order of filing may be a factor to be weighed by a trial court in which a class action is pending, when it considers a motion by a class-action party to enjoin competing actions in other courts. However, it is not dispositive. Indeed, "there are myriad . . . factors," no one, or combination, of which is "controlling." Newberg on Class Actions § 17.52 (3d ed. 1992) (proposing factors to be weighed, one of which is "[t]he advanced litigation stage of the independent proceedings through discovery or trial schedule"). White, for example, in listing a number of such factors, stated:
 "[T]he court enjoins the various other pending actions, relying on the following factors:
 "(1) the long history of related litigation in this court;
 "(2) to properly effectuate the terms of the proposed settlement, which the court finds to be fair, reasonable and adequate to class members, and to which class members received adequate notice and opportunity to object;
"(3) to conserve judicial resources;
 "(4) to properly protect the court's jurisdiction over the White class action, and to enforce and effectuate its judgment;
 "(5) to eliminate the risk of inconsistent or varying adjudications which may subject *Page 219 
defendants to incompatible standards of conduct;
 "(6) to prevent the prosecution of other actions that would frustrate the court's efforts to craft a class action settlement in the present case;
 "(7) to eliminate the risk of inconsistent or varying judgment[s] that may affect the rights of class members and impair their ability to protect their interests; and
 "(8) in light of the court's determination that the White class was properly certified, to utilize the class action mechanism, which is ideally suited for resolving the claims at issue, to settle this massive litigation."
822 F. Supp. at 1434-35.
To summarize the conclusions of the preceding discussion, two things are clear. First, where a non-opt-out class action has been certified in compliance with the Rule 23(a) requirements of (1) numerosity, (2) commonality, (3) typicality, and (4) adequacy of representation, see Butler v. Audio/VideoAffiliates, Inc., 611 So.2d 330 (Ala. 1992), the class-action court has the inherent, plenary power to enjoin the prosecution of competing individual actions, without resort to § 6-5-440.
In such a case, § 6-5-440 is not only redundant, but, where its strict application would require the abatement of the class
action, § 6-5-440 is repugnant to class-action practice. Second, the stay or abatement of individual actions competing with the class action is not to be triggered by any rigid orautomatic rule, but, instead, is to be based upon a reasoned balance of the equities in each particular case.
We, therefore, hold that § 6-5-440 does not apply to this case, or to any other class-action. In this connection, we overrule FNB of Jasper I and FNB of Jasper II, to the extent that they are based on § 6-5-440, as well as language in any other cases suggesting that § 6-5-440 applies to class actions.
Although Judge Hardaway determined that the application ofFNB of Jasper I to this case was limited, he stated:
 "Nevertheless, [FNB of Jasper I,] supra, made clear that prior to certification no basis for abatement of similar actions exist[s]. Movant had individual cases pending in a sister circuit at the time certification was granted in this case. This court sees no basis for creating a thicket of due process and constitutional issues by subsuming those individual cases through a subsequent certification by this court."
(Emphasis added.) Obviously, Judge Hardaway was, like the parties in this case, led astray by FNB of Jasper I. The confusion was understandable. However, as a result of the confusion generated by that case, Judge Hardaway did not weigh the "totality of the circumstances," or balance the equities, so far as can be discerned from the record. We are confident that, if he had, he would have concluded, as we have, that Payne should not have been excluded from the class action.
Not only was Tidmore's action commenced before Payne's action, but it had proceeded to a tentative settlement before Payne sought exclusion. State Mutual suggests — and the suggestion is credible — that Payne's exclusion from the class action could jeopardize the settlement. By contrast, Payne's action has remained essentially dormant since its inception. Regardless of the fact that the lack of progress in Payne's action has been due, in part, to the fact that it has been competing with a class action, the relative stages to which these actions have progressed is an important factor to be weighed. In fact, it weighs heavily against Payne's exclusion.
Moreover, State Mutual contends that the "real crux of the Payne plaintiffs' [objection to inclusion in the class] is that they do not like the proposed settlement." Reply Brief of StateMutual (case 1960455), at 8. In this connection, Payne's motion for exclusion was filed approximately two weeks after the trial judge had preliminarily approved the settlement, but sevenmonths after the class certification. If Payne, indeed, objects to the terms of the settlement, she may challenge those terms at the fairness hearing. Weighing the equities of this case compels the *Page 220 
conclusion that the trial court erred in excluding Payne.
As for the concern expressed in Judge Hardaway's order regarding "due process and constitutional issues" that might be implicated "by subsuming those individual cases through a subsequent certification," we reiterate that the "subsuming" of a multitude of individual, pending cases has been a primary rationale for the class-action device since the ChannelIslanders' case.
A constitutional argument similar to Payne's was presented in the recent case of Adams v. Robertson, 676 So.2d 1265 (Ala. 1995). In that case, we rejected the contention that the certification of a non-opt-out class violated the Constitution of Alabama. Specifically, we explained:
 "The objectors also argue that the trial court's certification of the class without an opt-out provision violates their right to trial by jury under § 11 of the Alabama Constitution, i.e., that the objectors were deprived of their day in court because the settlement agreement did not provide them a means of opting out of the class in order to pursue their own lawsuits.
 "In support of their argument, the objectors cite Moore v. Mobile Infirmary Ass'n, 592 So.2d 156
(Ala. 1991), and Henderson v. Alabama Power Co., 627 So.2d 878 (Ala. 1993). In Moore and Henderson, this Court struck down legislative limits or 'caps' on compensatory and punitive damages, respectively, as violating the right to trial by jury. The objectors contend that in this case the violation of the right to trial by jury is more egregious than those violations in Moore and Henderson, where mere limits were placed on the amount a jury could award, in comparison with this case where the right to a jury trial has been eliminated.
 "We disagree with the objectors' contention that a class action that does not have an opt-out provision is a violation of the right to trial by jury. As stated earlier, a class action is a device created solely for the purposes of litigation. The class action was created to enable a lawsuit to proceed where the number of those interested was too great to permit joinder. Phillips Petroleum Co. v. Shutts, 472 U.S. 797, 808, 105 S.Ct. 2965, 2972-73, 86 L.Ed.2d 628
(1985). The modern class action follows the same goal, allowing an action when there are common claims and too many parties for proper joinder.
 "Only those chosen as class representatives will actually be in the courtroom; however, all class members are 'having their day in court' through the representative[s]. Those class members who are absent from the courtroom are bound by the judgment, so long as the absent members were adequately represented by the class representatives, represented by a qualified attorney, provided with adequate notice of the proposed settlement, and given an opportunity to object to the settlement. The trial judge must then approve the settlement after analyzing the facts and the applicable law and considering any objections to the settlement. So long as these procedures are followed, courts hold that the absent class members have had their day in court.
Therefore, we hold that a class action without an opt-out provision does not violate the Alabama Constitution."
676 So.2d at 1271-72 (emphasis added).
This reasoning applies with equal force to the constitutional arguments made by Payne. Indeed, she has never challenged theadequacy of representation of either the class representatives or the class counsel. Nor has she challenged Judge Hardaway's findings of fact or conclusions of law as to any other
substantive Rule 23(a) issue, such as (1) numerosity, (2) commonality, or (3) typicality. Those substantive issues are not before us for review. Thus, we reject her constitutional objections to inclusion in the non-opt-out class.
 IV.
In summary, we emphasize that this case involves only class actions and competing individual actions. It logically follows, however, that, because § 6-5-440 is inapplicable in cases involving class actions competing with individual actions, afortiori, § 6-5-440 is inapplicable in cases such as FNB ofJasper *Page 221 I and FNB of Jasper II, which involved competing class actions.FNB of Jasper I and FNB of Jasper II are, therefore, overruled to the extent that they are based on § 6-5-440. The judgment granting Payne's motion for exclusion from the Tidmore class (case 1960455 and case 1960589) is reversed, and the cause is remanded for further proceedings consistent with this opinion.
As for case 1960410, we note that "[m]andamus is an extraordinary remedy, and it is not proper where the petitioner has some other adequate remedy." Allred v. Shirley,598 So.2d 1347, 1348 (Ala. 1992). The appeals in case 1960455 and case 1960589 have afforded State Mutual an adequate remedy. Therefore, the mandamus petition is denied as moot.
APPLICATIONS FOR REHEARING GRANTED; OPINION OF APRIL 4, 1997, WITHDRAWN; OPINION SUBSTITUTED.
1960410 — PETITION DENIED AS MOOT.
1960455 — REVERSED AND REMANDED.
1960589 — REVERSED AND REMANDED.
SHORES, J., concurs.
ALMON and BUTTS, JJ., concur specially.
HOOPER, C. J., and MADDOX, HOUSTON, and SEE, JJ., concur in the result.
KENNEDY, J., dissents.
[1] This result followed, at least where the plaintiffs had a "community of interest in the question of the fact and of law," as well as in the "subject matter" involved. Roanoke Guano Co.v. Saunders, 173 Ala. 347, 353, 56 So. 198, 200 (1911). Other jurisdictions, the majority, perhaps, did not require a community of interest in the "subject matter." 173 Ala. at 352,56 So. at 200.
[2] Although the trial court did not specify which subsection of Rule 23 formed the basis of the non-opt-out class, this Court reviewed the order of certification as one based on Rule 23(b)(1)(B). 692 So.2d at 816.
* "That Act provides in relevant part that:
" 'The Supreme Court and all courts established by Act of Congress may issue all writs necessary and appropriate in aid of their respective jurisdictions and agreeable to the usages and principles of law.'
"28 U.S.C. § 1651(a)."
[3] Payne contends that an Alabama trial court, having certified a plaintiff class, does not have the inherent equitable power to enjoin individuals within that class from pursuing competing individual actions commenced before certification. For this proposition, she cites In re Temple, 851 F.2d 1269 (11th Cir. 1988), on remand, Waldron v. Raymark Industries, Inc.,124 F.R.D. 235 (N.D.Ga. 1989). Those cases were discussed and distinguished by Judge Weinstein in Eagle-Picher. They involved the power of a United States district court to enjoin competing actions in state courts. Consequently, they were decided primarily on the basis of the Anti-Injunction Act, 28 U.S.C. § 2283, which has no application in cases like this one. To the extent they were decided on the basis of the Anti-Injunction Act, we regard them as inapposite. To the extent they were decided on other grounds, we regard them as aberrations in the class action field.