I concur in the result reached by the majority in vacating the conditional class certification order of the trial court,[3] but I write separately to clarify the necessity for the trial court to conduct a rigorous analysis before certifying a class for settlement purposes. Although conditional class certification for settlement is not at issue in this case, the majority expresses a broad approval of the practice, based on the following rationale:
 "Temporary settlement classes bear two significant characteristics. First, they are entered upon the agreement of the defendant.
Second, they promote the strong policy favoring settlements."
717 So.2d at 344 (emphasis in original). A third characteristic, not mentioned by the majority, is that any agreement between the *Page 353 
class representative plaintiffs and the defendant offers the potential for settlements that through collusion or simple inadvertence give inadequate protection to certain class members who are not fully represented by the named plaintiffs.
In Amchem Products, Inc. v. Windsor, 521 U.S. 591, ___,117 S.Ct. 2231, 2241, 138 L.Ed.2d 689 (1997), the Supreme Court of the United States addressed the dangers associated with the certification of a class for settlement purposes. In Amchem,id. at ___ _ __, 117 S.Ct. at 2241-42, after the action had been "conditionally certified," the defendants obtained an injunction to prevent further actions against them by class members who had failed to timely opt out of the certified class. The Supreme Court ruled that even though the district court had found that class counsel had ably negotiated a "fair" settlement in the best interests of the class, conditional certification for settlement purposes was improper. Id. at ___,117 S.Ct. at 2252. The Supreme Court stated that even in the settlement context class certification requires a "close look" at — a rigorous analysis of — Rule 23's certification criteria. Id. at ___, 117 S.Ct. at 2246. The Supreme Court stated:
 "Confronted with a request for settlement-only class certification, a district court need not inquire whether the case, if tried, would present intractable management problems, . . . for the proposal is that there be no trial. But other specifications of the rule — those designed to protect absentees by blocking unwarranted or over-broad class definitions — demand undiluted, even heightened, attention in the settlement context. Such attention is of vital importance, for a court asked to certify a settlement class will lack the opportunity, present when a case is litigated, to adjust the class, informed by the proceedings as they unfold."
Id. at ___, 117 S.Ct. at 2248 (emphasis added) (citations and footnote omitted).
With respect to whether the district court's general impression of the fairness of the settlement preempted a rigorous analysis of Rule 23's class certification criteria, the Supreme Court stated:
 "The safeguards provided by the Rule 23(a) and (b) class-qualifying criteria, we emphasize, are not impractical impediments — checks shorn of utility — in the settlement class context. First, the standards set for the protection of absent class members serve to inhibit appraisals of the chancellor's foot kind — class certifications dependent upon the court's gestalt judgment or overarching impression of the settlement's fairness.
 "Second, if a fairness inquiry under Rule 23(e) controlled certification, eclipsing Rule 23(a) and (b), and permitting class designation despite the impossibility of litigation, both class counsel and court would be disarmed. Class counsel confined to settlement negotiations could not use the threat of litigation to press for a better offer . . . and the court would face a bargain proffered for its approval without benefit of adversarial investigation . . . ."
Amchem, ___ U.S. at ___, 117 S.Ct. at 2248-49 (emphasis added) (citations omitted).[4] *Page 354 
The Supreme Court conducted a rigorous analysis and specifically held that the district court had erred in summarily certifying the class, because the distinct interests of certain class members were not adequately represented by the named plaintiffs.[5]
The potential for a collusive or unrepresentative settlement pursuant to a conditional certification under Federal Rule 23 is also present in regard to a conditional certification under Alabama Rule 23.[6] Therefore, in *Page 355 
my view, a trial court should, before conditionally certifying a class, conduct a rigorous analysis of — take a "close look" at — each of the certification factors (except, perhaps, trial management) enumerated in Rule 23, whether the certification is for settlement purposes or otherwise.
HOOPER, C.J., and MADDOX, J., concur.
[3] As stated in Ex parte Citicorp Acceptance Co., 715 So.2d 199
(Ala. 1997), a trial court may not conditionally certify a class action without conducting a "rigorous analysis" of the certification factors listed in Rule 23, Ala. R. Civ. P.
[4] Like Federal Rule 23, Alabama Rule 23, Ala. R. Civ. P., provides:
 "(a) Prerequisites to a Class Action. One or more members of a class may sue or be sued as representative parties on behalf of all only if (1) the class is so numerous that joinder of all members is impracticable, (2) there are questions of law or fact common to the class, (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class, and (4) the representative parties will fairly and adequately protect the interests of the class.
 "(b) Class Actions Maintainable. An action may be maintained as a class action if the prerequisites of subdivision (a) are satisfied, and in addition:
 "(1) the prosecution of separate actions by or against individual members of the class would create a risk of
 "(A) inconsistent or varying adjudications with respect to individual members of the class which would establish incompatible standards of conduct for the party opposing the class, or
 "(B) adjudications with respect to individual members of the class which would as a practical matter be dispositive of the interests of the other members not parties to the adjudications or substantially impair or impede their ability to protect their interests; or
 "(2) the party opposing the class has acted or refused to act on grounds generally applicable to the class, thereby making appropriate final injunctive relief or corresponding declaratory relief with respect to the class as a whole; or
 "(3) the court finds that the questions of law or fact common to the members of the class predominate over any questions affecting only individual members, and that a class action is superior to other available methods for the fair and efficient adjudication of the controversy. The matters pertinent to the findings include: (A) the interest of members of the class in individually controlling the prosecution or defense of separate actions; (B) the extent and nature of any litigation concerning the controversy already commenced by or against members of the class; (C) the desirability or undesirability of concentrating the litigation of the claims in the particular forum; (D) the difficulties likely to be encountered in the management of a class action.
". . . .
 "(e) Dismissal or Compromise. A class action shall not be dismissed or compromised without the approval of the court, and notice of the proposed dismissal or compromise shall be given to all members of the class in such manner as the court directs."
[5] Amchem involved a massive asbestos-litigation settlement and a class of plaintiffs that included persons who were currently suffering from asbestos-related illnesses and persons who had been exposed to asbestos, but had yet to develop symptoms. It was in the interest of certain class representatives, who were currently suffering asbestos-related illnesses, and in the interest of their counsel, to accept immediate cash payments as settlement. Amchem, ___ U.S. at ___, 117 S.Ct. at 2251. Such a settlement, however, was to the detriment of those class members who had yet to develop symptoms, because they would receive little if any benefits for medical expenses they had yet to incur. Id. These class members would have preferred for the settlement to include a fund that would provide long-term benefits. Id. This kind of situation could create an incentive for a defendant and the class representative plaintiffs, and their counsel, to reach an immediate settlement that benefits the class representatives and the defendant at the expense of certain class members not privy to the settlement negotiations. Thus, despite the district court's summary findings that the class representatives were adequate and that there was no collusion, the potential for collusion, or neglect, required a rigorous analysis of the class certification criteria. Id. This rigorous analysis uncovered inadequate class representation inAmchem. Id.
[6] The majority also states that "[a]t this time, we need not, and do not, determine whether exparte certifications are invalid per se" and it citesGeneral Telephone Co. of the Southwest v. Falcon, 457 U.S. 147,102 S.Ct. 2364, 72 L.Ed.2d 740 (1982). 717 So.2d at 347.Falcon, 457 U.S. at 160, 102 S.Ct. at 2372, indicates that some classes may be certified where "the issues are plain enough from the pleadings to determine whether the interest of the absent parties [i.e., nonrepresentative class members] are fairly encompassed within the named plaintiff's claim." (Emphasis added.) Of course, the "pleadings" to which the Supreme Court referred include both the plaintiff's complaint and the defendant's answer. See Rule 7(a), Fed.R.Civ.P. (defining "pleading" to include "a complaint and an answer"); see also Rule 7(a), Ala. R. Civ. P. (defining "pleading" as "a complaint and an answer"). As the Supreme Court in Amchem made clear, Falcon was not intended to promote the abandonment of the requirement for trial courts to take a "close look" at, that is, to conduct a rigorous analysis of, Rule 23's certification factors. See Ex parte Citicorp Acceptance Co.,715 So.2d 199, 205 (Ala. 1997) ("A class should not be certified without notice to the defendant, who may be able immediately and definitively to dispute the plaintiff's allegations."); see also Bagley v. City of Mobile,352 So.2d 1115, 1118 (Ala. 1977) (stating that the trial court must determine that all of the requirements of Rule 23(a) and at least one requirement of Rule 23(b) are met before certifying a class).
The majority purports to resolve the problems arising from the race to the courthouse among competing actions, through a patchwork application of statutory, common law, and equitable abatement rules. In doing so, the majority disregards the Legislature's having provided a first-to-file abatement statute, Ala. Code 1975, § 6-5-440, which, by its terms, applies to all situations involving competing actions. For example, if a defendant faces two competing class actions, § 6-5-440 will abate the second-filed class action. This is true even if the second-filed class action is certified first, because certification relates back to the date the class complaint was filed. United States Parole Comm'n v. Geraghty, 445 U.S. 388,404-05 n. 11, 100 S.Ct. 1202, 1212-14 n. 11, 63 L.Ed.2d 479
(1980); 13A C. Wright, et al., Federal Practice and Procedure § 3533.9, at 411 (1984). Instead of following the plain terms of the statute, the majority cites Ex parte Liberty National LifeIns. Co., 631 So.2d 865 (Ala. 1993), to support its patchwork approach, even though Ex parte Liberty National itself cited §6-5-440. See Ex parte State Mutual Ins. Co., 715 So.2d 207
(Ala. 1997) (See, J., concurring in the result).